**Donald B. MINSTER**

v.

**TOWN OF GRAY, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 1, 1990.
Decided Dec. 28, 1990.

Paul F. Driscoll (orally), Norman, Hanson & Detroy, Portland, for plaintiff.

William H. Dale (orally), Jensen, Baird, Gardner & Henry, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

The plaintiff, Donald D. Minster, appeals from a summary judgment entered in the Superior Court (Cumberland County, *Alexander, J.*) for the defendants, the Town of Gray and Richard Day, its Code Enforcement Officer (CEO), on a complaint challenging the necessity of a moratorium enacted by the Town to prevent, during the effective period of the moratorium, the further development of mobile home parks within the Town. We hold that the court properly determined that Minster failed to establish a complete absence of any state of facts that would support the need for the enactment of the moratorium and accordingly affirm the judgment.

Prior to 1989, the Town of Gray's zoning ordinance mandated minimum lot sizes of 80,000 square feet for all development within the Rural Residential and Agricultural (RRA) District, consisting of approximately 70% of the total land area in the Town, in which the Town allowed mobile home park developments as a conditional use. In 1988, the Legislature amended 30 M.R.S.A. § 4965 (Supp.1983) (the Act), to be effective January 1, 1989, to provide that any municipality that allowed mobile home park developments under its zoning ordinance could not enforce minimum lot sizes in excess of 20,000 square feet. As a further measure, effective January 1, 1990, all municipalities would be required to provide for mobile home park development. *See* P.L.1987, ch. 770 (codified at 30 M.R.S.A. § 4965(3) (Supp.1988)).[1] Shortly before the amended Act became effective, the town council of Gray enacted and later extended a moratorium to postpone the expansion or further development of mobile home parks in the Town for a period of one year pursuant to 30 M.R.S.A. § 4961–A(5)(A) (Supp.1988),[2] which provides:

> Any moratorium adopted by a municipality on the processing or issuance of development permits or licenses must meet the following requirements.
>
> A. The moratorium must be needed:
>
> (1) To prevent a shortage or overburdening of public facilities which would otherwise occur during the effective period of the moratorium or which is reasonably foreseeable as a result of any proposed or anticipated development; or
>
> (2) Because the application of existing comprehensive plans, land use ordinances or regulations or other applicable laws, if any, is inadequate to prevent serious public harm from residential, commercial or industrial development in the affected geographic area.

During the pendency of the moratorium, Minster entered into two land sales contracts to purchase land in the Town's RRA District and applied to the Town to build a mobile home park on these parcels of land.

---

1. The Legislature further amended the Act effective September 1989 and mandated minimum lot sizes based on the type of sewer system available to serve the particular mobile home park development at issue. *See* P.L.1989, ch. 506 (codified at 30–A M.R.S.A. § 4358 (Supp. 1989)).

2. P.L.1989, ch. 104, § C, 10 repealed and replaced this section without substantive changes. *See* 30–A M.R.S.A. § 4356(1) (Supp.1990).

On both occasions, the CEO informed Minster that his application could not be accepted because of the enactment of the moratorium. Minster appealed the CEO's decision on his first application to the Town's Zoning Board of Appeals (ZBA). The ZBA refused to hear Minster's administrative appeal on the ground that the ZBA had been deprived of jurisdiction over the appeal by the enactment of the land use moratorium. Accordingly, Minster did not appeal to the ZBA the CEO's refusal to accept his second application. Minster concurrently filed a suit for damages and for a declaratory judgment in the Superior Court against the Town and its CEO pursuant to M.R.Civ.P. 80B and 14 M.R.S.A. §§ 5951–5963 (1980 & Supp.1990). In his complaint, Minster alleged that the moratorium was "not needed to prevent an overburdening of public facilities and ... the Town of Gray's existing comprehensive plan and zoning ordinances are adequate to prevent serious public harm from the development of mobile home parks in the RRA zone." The defendants filed a motion for a summary judgment based on Minster's failure to exhaust his administrative remedies through a second appeal to the ZBA and on Minster's failure to overcome the presumption of validity afforded to the Town's finding of need for its enactment of the moratorium. *See Tisei v. Town of Ogunquit,* 491 A.2d 564, 569 (Me.1985). After a hearing, the court entered the motion for a summary judgment on both grounds, and Minster appeals from that judgment.

We agree with Minster's first contention that the trial court erred in stating as an alternative ground for the summary judgment that Minster had failed to exhaust his administrative remedies when he chose not to appeal to the ZBA the CEO's refusal to accept his second mobile home park application. *See Stanton v. Trustees of St. Joseph's College,* 233 A.2d 718, 723–24 (Me.1967); Gray, Me., Zoning Ordinance § 402.31(B) (January 6, 1987). We have previously recognized an exception to the prudential rule requiring an exhaustion of administrative remedies "when the plaintiff's complaint alleges persuasive grounds for relief which are *beyond the jurisdic-*

*tion of the administrative agency to determine,* and when it would be futile for the plaintiffs to complete the administrative appeal process." *Stanton v. Trustees of St. Joseph's College,* 233 A.2d at 724 (emphasis added). Minster's first ZBA appeal was expressly premised on the ground that the "moratorium ordinance enacted by the town council is illegal according to state law." A zoning board of appeals does not have the statutory authority to determine the validity of a legislative enactment. *See* 30–A M.R.S.A. § 4353 (Supp. 1990) (setting forth powers of a zoning board of appeals). Nor would an administrative appeal have resulted in any modification by the ZBA of the CEO's prior decision in light of Minster's stated objections. *Cf. New England Whitewater Ctr., Inc. v. Department of Inland Fisheries and Wildlife,* 550 A.2d 56, 60 (Me.1988) (when Department could have modified its allocation and methodology, plaintiff's objection to that procedure cannot be raised for first time on appeal). 14 M.R.S.A. § 5954 (1980 & Supp.1990) provides that "[a]ny person ... whose rights, status or other legal relations are affected by a statute [or] municipal ordinance ... may have determined any question of construction or validity arising under the ... statute [or] ordinance ... and obtain a declaration of rights, status, or other legal relations thereunder." We have previously held that, pursuant to section 5954, a plaintiff may file an independent civil action for a declaratory judgment regarding the validity or construction of a statute without first availing himself of the administrative process. *See Annable v. Board of Envtl. Protection,* 507 A.2d 592, 595 (Me.1986).

However, we do not agree with Minster's second contention that, because a genuine issue of material fact remained on the need for the enactment of the moratorium, the trial court erred in granting the defendants' motion for a summary judgment. *See* 30 M.R.S.A. § 4961–A(5)(A) (Supp.1988). We will affirm a summary judgment if the record discloses that there is no genuine issue of material fact and that any party is entitled to a judgment as

a matter of law. M.R.Civ.P. 56(c); *see Saltonstall v. Cumming*, 538 A.2d 289, 290 (Me.1988). Absent evidence to the contrary, a moratorium, like any other municipal ordinance, is presumptively valid. *See Town of Boothbay v. National Advertising Co.*, 347 A.2d 419, 422 (Me.1975). The court may not substitute its judgment regarding the necessity of an ordinance for that of the legislative body that enacted it. *See National Hearing Aid Centers, Inc. v. Smith*, 376 A.2d 456, 461 (Me.1977). Minster, as the party challenging the moratorium, has the burden to "establish *the complete absence of any state of facts that would support the need for the enactment.*" *Tisei v. Town of Ogunquit*, 491 A.2d 564, 569 (Me.1985) (emphasis added).[3]

 Section 4961–A requires that Minster meet his burden of proof on both of the Town's possible justifications for the enactment of the moratorium. Because the record discloses that Minster failed to refute the Town's assertion of the potential overburdening of the Town's public facilities as a result of any proposed or anticipated mobile home park development, we need not address the alternative justification provided in section 4961–A. Here, the trial court had before it the depositions and affidavits of town officials establishing uncontroverted evidence of the potential strain that an immediate implementation of the amended Act would have placed on the Town's public facilities. First, the amended Act would have drastically reduced the minimum lot size from two acres to less than one-half acre and created the potential for substantially higher density population in the Town's RRA District, comprising over 70% of the Town's land and located far from the current center of its municipal services. Second, higher density development in the RRA District would foreseeably require that the Town employ larger police, fire, and rescue departments. Third, according to an aquifer analysis program conducted for the Town's water district prior to enactment of the moratorium, minimum lot sizes of less than 80,000 square feet would create a potential threat of depletion to the Town's water supply. Fourth, any threatened contamination of the aquifer would undermine the Town's overall objective policies that "[l]and use policies should be designed to eliminate the need for town sewers and to limit costly expansion of the water system." *See* Gray, Me., Comprehensive Plan 17 (December 17, 1984). Minster failed to produce any evidence to contradict these facts asserted by the Town as the basis for its decision to postpone the implementation of the amended Act. Accordingly, the trial court properly granted the defendants' motion for a summary judgment.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Contrary to Minster's contention, our decision in *Tisei*, to vacate a summary judgment granted for the *plaintiff*, recognized the significant distinction between the minimal burden of necessity placed on a defendant-municipality to enact a moratorium and the absolute burden of proof placed on the party challenging the moratorium.