**John W. ABBOTT**

v.

**COMMISSIONER OF INLAND FISHERIES AND WILDLIFE.**

Supreme Judicial Court of Maine.

Argued March 3, 1993.

Decided April 21, 1993.

John W. Abbott, pro se (orally).

Cabanne Howard (orally), Deputy Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

GLASSMAN, Justice.

John W. Abbott appeals from a judgment entered in the Superior Court (Cumberland County, *Brennan, J.*) affirming the decision of the Commissioner of Inland Fisheries and Wildlife denying Abbott's petition for a set-aside for noncommercial public use of the recreational use limit for the Kennebec and the West Branch of the Penobscot Rivers pursuant to 12 M.R.S.A. § 7369(6) (Pamph.1992). Abbott contends that the Commissioner erred as a matter of law in concluding that a set-aside is not required under the present conditions on the rivers. We find no error in the record, and accordingly, we affirm the judgment.

Whitewater rafting in Maine is regulated pursuant to 12 M.R.S.A. §§ 7361 to 7370–A (Pamph.1992). The statute establishes maximum recreational use limits on the Kennebec River of 800 commercial passengers on weekends and 1,000 commercial passengers on weekdays and on the West Branch of the Penobscot River of 560 commercial passengers every day between 8:30 a.m. and 5:00 p.m. *Id.* § 7368(2–A) & (3). Commercial recreational use is allocated every five years among licensed whitewater rafting outfitters. *Id.* § 7369(3) & (6). Although noncommercial recreational use is not limited, *id.* § 7368(2–A) & (3), the statute provides for a set-aside of up to 10% of the recreational use limit to accommodate noncommercial public use. *Id.* § 7369(6).

On October 26, 1990, the deadline established by the Commissioner for applications for commercial recreational use allocations, Abbott filed a petition for a noncommercial public use set-aside. In early November, after reviewing all the applications, the Commissioner announced the preliminary allocation of commercial use and denied Abbott's petition. The Commissioner determined that the Legislature had provided a 200–passenger allocation for noncommercial public rafting on the Kennebec on weekends by the difference in the weekday and weekend commercial use limits; and declined to consider a set-aside until the combined commercial and noncommercial recreational use on weekends reached the higher weekday commercial use limit. As to the Penobscot, the Commissioner determined that no set-aside was necessary because commercial use is declining and noncommercial use of whitewater craft is low.

Abbott requested the Commissioner to reconsider his decision. On December 3, 1990, the Commissioner issued final 1991–95 recreational use allocations that made no provision for the noncommercial public use set-aside sought by Abbott. On January 7, 1991, Abbott filed a complaint, pursuant to M.R.Civ.P. 80C, seeking a review by the Superior Court of the Commissioner's ruling.[1] Following a hearing, the

---

1. Contrary to the Commissioner's contention, we find that Abbott's petition to the Superior Court was filed in a timely manner pursuant to M.R. Civ.P. 80C(b) and 5 M.R.S.A. § 11002(3) (1989). Although Abbott received an initial denial of his petition from the Commissioner on November 8, 1990 in the context of a preliminary allocation, he challenges the final allocation of December 3, 1990 that failed to include a public noncommercial use set-aside. As a party

court affirmed the Commissioner's decision, and Abbott appeals.

 On an appeal from an intermediate appellate review of an administrative decision, we review the agency decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Lewiston Raceway, Inc. v. Harness Racing Comm'n*, 593 A.2d 663, 664 (Me.1991). When the dispute involves the agency's interpretation of a statute, although the agency's construction is not conclusive on the court, its interpretation of a statute administered by it is entitled to great deference and will be upheld unless the statute plainly compels a contrary result. *Senty v. Board of Osteopathic Exam. & Reg.*, 594 A.2d 1068, 1072 (Me.1991).

The statutory provision at issue states:

> Based on the demand for noncommercial public use, the department shall set aside up to 10% of the recreational use limit on any particular rapidly flowing river for noncommercial public use of whitewater craft.

12 M.R.S.A. § 7369(6). Abbott contends that the use of the word "shall" in this section mandates the noncommercial public use set-aside. We disagree.

By enacting the statute, the Legislature sought, among other things, to address the overburdening of the state's rapidly flowing rivers by regulating commercial whitewater rafting. *Id.* § 7361. Within this context, the Legislature limited commercial whitewater rafting to levels that would allow for competing noncommercial use on the rivers and protect the environmental integrity of the river and the surrounding resources. *Id.* § 7364. In establishing the recreational use limits the Legislature preliminarily balanced commercial against noncommercial uses, reducing the commercial limit on the Kennebec on weekends in anticipation of an increased noncommercial public use and limiting commercial use on the Penobscot to between 8:30 a.m. and 5:00 p.m. "to allow free time for other uses." *Id.* § 7368(3).

The language of the statute qualifies the seemingly mandatory "shall set aside" with the preface "[b]ased on the demand for noncommercial public use" and the phrase "up to 10%," thus conferring discretion on the Commissioner to evaluate the noncommercial public use of the river and the percentage of set-aside, if any, up to the maximum of 10%, necessary to achieve the goals of the Act. We cannot say on this record that the Commissioner abused his discretion in denying Abbott's petition for a set-aside.

We find no merit in Abbott's contention that the demand for all types of public noncommercial boating use (including canoes and kayaks) triggers the set-aside. "'Whitewater craft' means any raft, dory, bateau or similar watercraft which is used to transport passengers along rapidly flowing rivers, but does not include canoes or kayaks." *Id.* § 7363(11). Because the regulatory scheme pertains only to whitewater craft, the Commissioner properly interpreted the implementation of the set-aside provision to be measured by the demand for noncommercial public use of whitewater craft, excluding canoes or kayaks. *See id.* § 7369.

The entry is:

Judgment affirmed.

All concurring.