ATLANTIC SALMON FEDERATION
et al.

v.

BOARD OF ENVIRONMENTAL
PROTECTION et al.

Supreme Judicial Court of Maine.

Argued May 15, 1995.

Decided July 12, 1995.

---

Robert G. Dreher (orally), Sierra Club Legal Defense Fund, Inc., Washington, DC, for Atlantic Salmon.

Anne S. Almy (orally), Attorney, Appellate Section, Environment & Natural Resources Div., Washington, DC, for Dept. of Justice.

Kim Vandermeulen, Vandermeulen, Goldman & Allen, P.A., Augusta, for plaintiffs.

Margaret McCloskey (orally), Asst. Atty. Gen., Augusta, for B.E.P.

Virginia E. Davis (orally), Preti, Flaherty, Beliveau & Pachios, Augusta, for Bangor Hydro–Electric.

Jeffrey Thaler (orally), Berman & Simmons, P.A., Lewiston, for intervening Towns.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

GLASSMAN, Justice.

The Atlantic Salmon Federation; the Maine Council of Atlantic Salmon Federation; American Rivers, Inc.; the Sportsmen's Alliance of Maine; Trout Unlimited; the Maine Council of Trout Unlimited; the Sierra Club; the Natural Resources Council of Maine; the Maine Audubon Society; and the Conservation Law Foundation of New England, Inc. (the Conservation Intervenors) appeal from the judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming the decision of the Board of Environmental Protection granting a conditional approval to Bangor Hydro–Electric Company for a permit to build the Basin Mills Dam and to expand the Veazie Dam. On appeal, the Conservation Intervenors contend that on the evidence before it (1) the Board should have made a factual finding concerning the likelihood that state and federal agencies will cooperate in carrying out the mitigation procedures ordered by the Board; (2) the Board should have required Bangor Hydro, as in-kind mitigation, to remove either the Veazie Dam or the Great Works Dam; (3) the Board should have ordered a hydraulic flow model of the expanded Veazie Dam before approving the permit; and (4) the Board violated the Maine Rivers Act by approving the permit to expand the Veazie Dam because the dam is on a specially protected segment of the Penobscot River. Finding no error, we affirm the judgment.

The record reflects the following: Pursuant to the Maine Waterway Development and Conservation Act, 38 M.R.S.A. §§ 630–637 (1989 & Supp.1994), Bangor Hydro filed an application for a permit to construct the "Basin Mills Project." The proposal consisted of the construction and licensing of the Basin Mills Dam, a new hydro-electric dam, the expansion of the existing Veazie Dam, and the decommissioning of the Orono Dam.

After providing notice of a public adjudicatory hearing on the application, the Board granted intervenor status to twenty-three organizations and individuals. The Board consolidated the intervenors into four groups: (1) the Friends of Basin Mills; (2) the Eastern Maine Development Corporation and the Towns of Bradley, Eddington, Orono, and Veazie; (3) the Conservation Intervenors; and (4) the Penobscot Indian Nation. After holding public hearings, the Board granted conditional approval for the construction of the Basin Mills Dam and the expansion of the Veazie Dam. In addition, the Board concluded that the Orono Dam should be left in place.

To mitigate damage to the fish in the Penobscot River and their habitat, the Board ordered Bangor Hydro to conduct various mitigation procedures, including, *inter alia,* installing and operating permanent upstream and downstream fish passage facilities at the Veazie and Basin Mills Dams; stocking at least 30,000 salmon smolts each year at such times and places as determined by the Atlantic Sea Run Salmon Commission [ASRSC]; removing the remains of the breached Bangor Dam; providing resources for the ASRSC and the Department of Marine Resources to trap and truck up to 12,000 salmon, 30,000 shad, and 150,000 alewives each year from the Veazie Dam to a point above the Milford Dam; conducting a hydraulic modeling study of the effects on fishing opportunity caused by the expansion of the

Veazie Dam; and conducting a cost-benefit study, in consultation with the Town of Howland, state and federal agencies, and the Penobscot Indian Nation, to evaluate the removal of the Howland Dam.

Pursuant to 5 M.R.S.A. §§ 11001–11008 (1989) and M.R.Civ.P. 80C, the Conservation Intervenors filed a complaint in the Superior Court seeking a judicial review of the Board's decision. The Penobscot Indian Nation did not file a complaint seeking judicial review, but the United States Department of Justice subsequently filed a brief as *amicus curiae.* Following a hearing, the Superior Court affirmed the Board's decision, and this appeal followed.

■ On an appeal from an intermediate appellate review of a Board decision, we review the Board's decision directly for an abuse of discretion, errors of law, or findings not supported by the evidence. *International Paper Co. v. Board of Envtl. Protection,* 629 A.2d 597, 599 (Me.1993).

### I.

■ The Conservation Intervenors first contend that the Board's decision was arbitrary and in disregard of the evidence because the Board failed to make a finding concerning the likelihood of whether the agencies will issue the permits needed to implement the mitigation procedures, the Board failed to order, as in-kind mitigation, the removal of either the Great Works Dam, owned by James River, or the Veazie Dam, and the Board failed to order Bangor Hydro to conduct a hydraulic flow model to ascertain the impact of the Veazie Dam expansion before issuing the permit. We disagree.

There is no statutory requirement that compels the Board to make a finding concerning whether Bangor Hydro will be successful in obtaining the permits needed to implement the mitigation procedures, to explore every possible alternative of in-kind mitigation, or to conduct a hydraulic flow model of the dam's discharges before issuing a permit.

■ Pursuant to 38 M.R.S.A. § 636 (1989 & Supp.1994), the Board shall approve a hydropower project once the applicant for a permit has demonstrated eight enumerated criteria. Pursuant to section 636(6), the applicant must take reasonable provisions to mitigate the adverse environmental impacts of the project. There are several safeguards that exist in the event that the state and federal agencies refuse to cooperate or issue the necessary permits. The Board approved the Basin Mills Project subject to the standard conditions of approval that require Bangor Hydro to secure all necessary permits or be in violation of the terms of approval. *See* Me. Dep't of Envtl. Protection Reg. 450.9(c) (Sept. 29, 1987). If Bangor Hydro does not comply with the terms of the permit approval, it will be subject to criminal and civil penalties pursuant to 38 M.R.S.A. § 349 (1989 & Supp.1994), and the Board may modify, revoke, or suspend the permit pursuant to 38 M.R.S.A. § 341-D(3) (Supp.1994). In addition, contrary to the Conservation Intervenors' contention, the Board may set a condition requiring the applicant to secure the action of a third party, and when the Board does so, it is incumbent on the applicant to fulfill the conditions and assure that the project will not be foiled by a third party's default. *Gulick v. Board of Envtl. Protection,* 452 A.2d 1202, 1210 (Me.1982).

■ Contrary to the Conservation Intervenors' contention, the Board's decision that there were adequate mitigation measures was not arbitrary because the Board failed to require in-kind mitigation by the removal of an existing dam. The Board considered and weighed evidence on the issue of in-kind mitigation and the removal of a dam. The Board ordered the removal of the remains of the breached Bangor Dam located on the main stem of the Penobscot River. It also delayed a final determination as to the removal of the Howland Dam until it receives the results of the study to evaluate the costs and benefits of removal. The regulation at issue declares the policy objective that in-kind mitigation is *preferred* and that out-of-kind mitigation is sufficient when in-kind mitigation is either not feasible or not desirable. Me. Dep't of Envtl. Protection Reg. 450.5(A)(6) (Sept. 29, 1987). We give deference to an agency on questions involving the interpretation and application of a regulation,

unless the regulation plainly compels a contrary result. *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The Board's conclusion that Bangor Hydro had made reasonable provisions to mitigate the adverse environmental impact of the project is adequately supported by the evidence.

■ Nor did the Board err by granting a permit before a hydraulic flow model was conducted of the expanded Veazie Dam. The Board's decision that the mitigation procedures are adequate was based in part on a flow study that concluded that any loss in fishing opportunity would be fully mitigated. In addition, the Board concluded the construction on the Veazie Dam cannot be started until the hydraulic model study is completed and a plan to maximize the opportunity for salmon angling is reviewed.

## II.

■ The Conservation Intervenors further contend that pursuant to 12 M.R.S.A. § 403 (1994), the Board is prohibited from issuing the permit for the expansion of the Veazie Dam because the proposed expansion will intrude into a protected segment of the river, thus placing the Veazie Dam within a protected area. We disagree.

Those situations restricting the Board's authority to issue a permit for a hydropower project are set forth in 12 M.R.S.A. section 403 which provides in pertinent part:

> No license or permit under Title 38, sections 630 to 636 may be issued [1] *for construction of new dams on the river and stream segments subject to this special protection without the specific authorization of the Legislature,* [2] for the construction of any water diversion project which would constitute a hydropower project pursuant to Title 38, section 632, and which would bypass all or part of the natural course of river and stream segments subject to this special protection without the specific authorization of the Legislature or [3] *for additional development or redevelopment of existing dams on the river and stream segments subject to this special protection where the additional de-*

> *velopment or redevelopment diminishes the significant resource values of these river and stream segments.*

> . . . .

> For purposes of this section, outstanding river and stream segments meriting special protection shall include:

> . . . .

> **12. Penobscot River.** The Penobscot River, including the Eastern Channel from Sandy Point in Stockton Springs *up to, but not including, the Veazie Dam. . . .*

(Emphasis and numbers in brackets added); *see also* Me. Dep't of Envtl. Protection Reg. 450.5(B) (Sept. 29, 1987).

The Board concluded that "any expansion of generating capacity at the Veazie Dam would not be subject to the 'no diminishment' test [of the third portion of section 403] since the dam is located above—not on—the identified protected river segment."

■ When interpreting a statute, we first examine the plain meaning of the statutory language. *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). Although an agency's interpretation of a statute administered by it is not conclusive, we afford it great deference and will uphold the agency's interpretation " 'unless the statute plainly compels a contrary result.' " *Wood v. Superintendent of Ins.*, 638 A.2d 67, 70 (Me.1994) (quoting *Abbott v. Commissioner of Inland Fisheries & Wildlife*, 623 A.2d 1273, 1275 (Me.1993)).

By the plain meaning of section 403, a Board permit for the expansion of the Veazie Dam is not prohibited. Section 403 is not applicable because the expansion of the Veazie Dam is not the construction of a "new" dam, and because the existing Veazie Dam is expressly excluded from being within a specially protected segment of the Penobscot River. *See* 12 M.R.S.A. § 403(12) (1994) (the protected segment extends "up to, but not including, the Veazie Dam"). Therefore, the Board properly determined that the Maine Rivers Act does not prohibit the Board from issuing a hydropower project permit for the expansion of the Veazie Dam.

### III.

 We need not address the contention of the United States Department of Justice that the Board's decision violates the Penobscot Indian Nation's reserved fishing rights established by 30 M.R.S.A. § 6207(4) (Pamph.1994). We consider the contentions of an *amicus curiae* only to the extent that the contentions concern issues properly preserved and pursued by the parties themselves. *Jacobs v. Jacobs,* 507 A.2d 596, 597 n. 1 (Me.1986); *see also Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 705 n. 22 (1st Cir.1994) (an amicus cannot "introduce new issues or issues not properly preserved for appeal"). Here, the precise issue raised by the United States Department of Justice before the trial court was not presented by the Penobscot Indian Nation at the hearing before the Board nor did the Penobscot Indian Nation seek judicial review of the Board's decision. *See New England Whitewater Ctr., Inc. v. Department of Inland Fisheries & Wildlife,* 550 A.2d 56, 58 (Me. 1988) (party must raise any objection before agency in administrative proceeding to preserve issue for appeal).

The entry is:

Judgment affirmed.

All concurring.