Dexter **BERRY**, et al.

v.

**BOARD OF TRUSTEES, MAINE STATE RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued March 27, 1995.

Decided July 27, 1995.

Kaighn Smith, Jr. (orally), Fontaine & Beal, P.A., Portland, for plaintiffs.

Andrew Ketterer, Atty. Gen., H. Cabanne Howard (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Plaintiffs, twenty-three retired Maine public school teachers, appeal from a summary judgment entered in the Superior Court (Kennebec County, *Chandler, J.*) in favor of the Board of Trustees (the Board) of the Maine State Retirement System (MSRS). Plaintiffs' complaints sought judicial review pursuant to M.R.Civ.P. 80C, and relief premised on an illegal impairment of contractual obligations or equitable estoppel. At issue is the exclusion, for purposes of calculating retirement benefits, of payments for unused sick leave from plaintiffs' "earnable compensation." The Board excluded the payments because they were made as a "retirement incentive." We affirm the Superior Court's denial of the 80C appeals and the summary

judgment entered against plaintiffs on their contractual claims. Because we find that the Superior Court incorrectly confined plaintiffs to the evidentiary record established in the administrative proceeding, we vacate the judgment entered on plaintiffs' equitable estoppel claims.

The record discloses the following undisputed facts: Plaintiffs are former school teachers who retired between July 1990 and November 1991 from School Administrative District Nos. 22, 36, and 43.[1] Shortly before retirement, plaintiffs received payment from their respective school districts for up to 30 days of unused, accumulated sick leave. Each plaintiff applied to the MSRS for retirement benefits, and received a notice of retirement and a certificate stating that no excess contributions had been made.

After retirement, the Executive Director of the MSRS notified plaintiffs that their retirement benefits had been erroneously calculated by including up to 30 days of accumulated sick leave, that their benefits would be reduced, and that the Board would attempt to collect overpayments already made.[2] Plaintiffs appealed the decisions of the Executive Director, and after hearings, the Board denied all the appeals. In order to determine whether the payments were retirement incentives, the Board examined the label, presentation and duration of the sick leave payment plan, the length of the required notice, and general availability. The Board's factual finding that the payment of the sick leave constituted retirement incentives in all cases is not challenged on appeal to this Court.

Plaintiffs sought judicial review pursuant to M.R.Civ.P. 80C and jointly filed a complaint requesting a declaratory judgment that the Board's actions unconstitutionally impaired contractual obligations owed to them in violation of Article 1, section 10 of the U.S. Constitution, 42 U.S.C. § 1983, 5

M.R.S.A. § 17001, and Article 1, section 11 of the Maine Constitution. Plaintiffs also argued that the Board should be estopped from reducing their retirement benefits. The Superior Court denied plaintiffs' Rule 80C appeals and granted summary judgment to the Board on all counts. Plaintiffs now appeal from the judgment of the court.

### M.R.Civ.P. 80C Appeals

We review the decision of the Board directly because the Superior Court acted exclusively in an appellate role. *Huard v. Maine State Retirement Sys.*, 562 A.2d 694, 695 (Me.1989). We review the decision for abuse of discretion, errors of law, or findings not supported by the evidence. *Abbott v. Commissioner of Inland Fisheries & Wildlife*, 623 A.2d 1273, 1275 (Me.1993). When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, "is entitled to great deference and will be upheld unless the statute plainly compels a contrary result." *Id.*

Teachers' retirement pensions are funded partially by teacher contributions of a percentage of earnable compensation and partially by general state appropriation. 5 M.R.S.A. §§ 17154(6), 17701 (1989 & Supp. 1994). Under this arrangement, the school districts bear no financial responsibility for funding retirement, and therefore have little incentive to control the level of retirement benefits. At issue in this case is whether the amount of the sick leave payments made to plaintiffs as an incentive to retire may be recognized for the purpose of computing their monthly retirement stipends.

The retirement benefit calculation begins with a determination of "average final compensation," 5 M.R.S.A. § 17852, which is "[t]he average annual rate of earnable compensation of a member during the 3 years of creditable service as an employee in Maine,

---

1. The three school districts and teachers are as follows: SAD No. 22 (Rosemary Hallsey); SAD No. 36 (June Davis, Ernest Gomez, Ruth Hartley, Wilfred Laverdiere, Clydelle Souther, and Frances Wallace), and SAD No. 43 (Amelia Agostinelli, Dexter Berry, Norman Foster, Leslie W. Gatchell, Margaret Hall, Duane C. Hayes, Theodore J. Ionta, Virginia Jones, Nicholas Lavorgna, Sr.,

Anthony N. Lavorgna, William J. Morgan, John H. Norton, Roger J. Pepin, Robert H. Susbury, John I. Tapley, and John R. Watson).

2. The downward adjustments in retirement benefits ranged from $9.26 to $114.47 per month.

not necessarily consecutive, in which the member's annual rate of earnable compensation is highest." 5 M.R.S.A. § 17001(4)(A). At the time of plaintiffs' retirement, earnable compensation was defined as follows:

> "Earnable compensation" means salaries and wages paid for services rendered in an employment position, subject to the following inclusions, exclusions and limitations.
>
> . . . . .
>
> B. "Earnable compensation" does not include:
>
> (1) *Payment for more than 30 days of unused accumulated or accrued sick leave,* payment for more than 30 days of unused vacation leave or payment for more than 30 days of a combination of both;
>
> (2) *Any other payment which is not compensation for actual services rendered* or which is not paid at the time the actual services are rendered; ...

P.L.1989, ch. 800 (effective July 14, 1990) (codified as amended at 5 M.R.S.A. § 17001(13)) (emphasis added).[3]

■ Plaintiffs argue that subsection B(1) is unambiguous and plainly allows retirees to include within earnable compensation, payments received for up to 30 days of earned sick leave. They argue that subsection B(2) excludes *other* payments, but does not modify subsection B(1). In determining the meaning of a statute, we first look to the language of the statute itself. *Porter v. Maine State Retirement Sys.,* 609 A.2d 1146, 1149 (Me.1992). Here, viewed in context, the language of the statute is ambiguous.

The Board argues that the following rule resolves what it describes as a tension between subparagraphs B(1) and B(2):

> When calculating a member's average final compensation, *earnable compensation shall not include* any amounts paid to the member in lieu of fringe benefits or *any amounts paid as retirement stipends or to provide an incentive to retire* or payable because of planned retirement or any other amount paid which is a bonus or stipend that does not represent payment for services currently being rendered. This section is applicable to all members of the System; i.e. state employees, teachers and participating local district employees.

Rules of the MSRS, ch. 101, § 2 (amended Aug. 11, 1987) (emphasis added).[4] This rule, however, does not clearly qualify subsection B(1), particularly given the provision in the same rule that "a maximum of thirty days of vacation and/or sick leave for which compensation is paid at termination is included in calculating average final compensation." Rules of the MSRS, ch. 101, § 1.

Because of the unresolved ambiguity, we look to the legislative history of the 1975 amendment that first added the exclusions to earnable compensation at issue in this case.[5] The Legislature limited the recognition of payments for unused leave because of abuses in the computation of retirement benefits. L.D.1939, Statement of Fact 28 (107th Legis.1975). The debate reveals that the Legislature added the 30–day limit in response to the practice of "ballooning" salary to achieve higher retirement benefits. Legis.Rec. B2130–31 (1975). The 30–day limit represented a compromise between the prior prac-

---

3. One teacher at SAD No. 43 retired on July 1, 1990 prior to the effective date of the 1990 amendment to the statute. Section 17001(13)(B), however, was not changed by that amendment. The only change potentially relevant to this appeal was to the first sentence of section 17001(13). Before the 1990 amendment, it read: " 'Earnable compensation' means salaries and wages, subject to the following inclusions and exclusions." The current version of this statute may be found at 5 M.R.S.A. § 17001(13) (Supp.1994).

4. This rule remained the same throughout the period in which the teachers retired (July 1990 to November 1991).

5. The amendment read as follows:

> "Earnable compensation" shall mean actual compensation, including maintenance if any, but shall not include payment for more than 30 days of accumulated or accrued sick leave or unused vacation leave or a combination of both, nor include any other payment which is not compensation for actual services rendered or which is not paid at the time such services are rendered.

P.L.1975, ch. 622, § 1.

tice and the total exclusion of sick leave payments. *Id.* at B2127–31. This legislative history, however, sheds no light on whether the exclusion for "any other payment which is not compensation for actual services rendered" limits the recognition of sick leave payments if used as a retirement incentive as distinguished from a payment pursuant to a general sick leave payment policy.

■ Plaintiffs argue that case-by-case scrutiny of the bargaining process to determine whether sick leave payments can be deemed retirement incentives "injects unpredictability into what was otherwise a plain and clear delineation of the limited use of sick leave pay to enhance retirement benefits." They contend that this "flatly defeats the Legislature's objective of giving employees a consistent, predictable understanding of what constitutes earnable compensation."[6] The statute, however, stops short of allowing 30 days of sick leave pay to enhance retirement benefits under all circumstances. Subsection B(2) added a limitation that, at the very least, created an ambiguity with respect to retirement incentives. Because the statute does not plainly compel a contrary result, *Abbott,* 623 A.2d at 1275, we defer to the Board's interpretation.

### Contractual Claims

The Superior Court found that even if a contractual relationship existed between the State and plaintiffs,[7] the State met any contractual obligation by calculating the retirement benefits in accord with the statute. We

agree that on this count the Board was entitled to judgment as a matter of law.

### Equitable Estoppel

■ Plaintiffs next argue that the Superior Court erred in granting summary judgment to the Board on their independent action seeking to estop the Board from reducing the benefits they were awarded.[8] The court treated the estoppel claim as part of the 80C appeal, and decided it on the basis of the evidence set forth in the administrative record. Finding no evidence of reliance, the court ruled, as a matter of law, that plaintiffs could not prevail on the estoppel claim. Although plaintiffs do not contest the court's denial of their request to supplement the record pursuant to M.R.Civ.P. 80C(e), plaintiffs argue that their estoppel claims are separate from their Rule 80C petitions, that the court ordered them to brief those claims, that they did so, and that they submitted affidavits in support of their specific estoppel claims. The court declined to consider the affidavits, confined plaintiffs to the administrative record, and granted a summary judgment.

■ Generally, a party in an administrative proceeding must raise any objections it has before the agency for the issue to be preserved for appeal. *New England Whitewater Ctr., Inc. v. Department of Inland Fisheries & Wildlife,* 550 A.2d 56, 58 (Me. 1988). This prudential rule is premised on the doctrine of exhaustion of administrative remedies, and reflects " '[s]imple fairness to those who are engaged in the tasks of admin-

---

6. The plaintiffs rely on *Huard,* 562 A.2d at 698 ("The statutory definition must be interpreted in light of the objectives of the statute. Here the controlling statutory purpose is to fulfill the 'legitimate retirement expectations of employees.' What an employee may reasonably expect is consistency over the years in the definition of 'earnable compensation' used in administering the Maine State Retirement System.") (citation omitted). In *Huard,* we applied section 17001(13)(B)(2), holding that "benefit package" cash payments to teachers were not direct compensation but rather were compensation for fringe benefits foregone. 562 A.2d at 696–99. *Huard* does not address the issue in the present case, however, as it did not involve subsection B(1) of the statute.

7. We addressed the existence of a contractual relationship in the public employee retirement context in *Spiller v. State,* 627 A.2d 513 (Me. 1993).

8. "Estoppel bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue." *Anderson v. Commissioner of Dep't of Human Serv.,* 489 A.2d 1094, 1099 (Me.1985). Equitable estoppel is not precluded solely because it is invoked against a governmental agency performing a governmental function. *Maine Sch. Admin. Dist. No. 15 v. Raynolds,* 413 A.2d 523, 533 (Me.1980). To prevail, however, a party must show detrimental reliance, and the reliance must be reasonable. *See City of Auburn v. Desgrosseilliers,* 578 A.2d 712, 714 (Me.1990).

istration, and to litigants,' and ensures that the agency and not the courts has the first opportunity to pass upon the claims of the litigants." *Id.* at 59–60 (citation omitted). In *New England Whitewater*, relied on by the Superior Court, we held that the failure of plaintiffs to assert their procedural due process claims before the agency denied the agency the opportunity to consider those objections and modify the allocation process and methodology before final allocations were issued. *Id.* at 60. The record in that case permitted the conclusion that the agency would have considered changing its procedures if notified of the plaintiffs' procedural objections during the course of the allocation process. *Id.* at 61. Our decisions in this area demonstrate that we have confined parties to the administrative record primarily when issues of due process and fundamental fairness are involved.[9]

 The present case, however, is not one in which the Board could have resolved the equitable estoppel issue even if presented with evidence of reliance. *Cf. Minster v. Town of Gray,*[10] 584 A.2d 646, 648 (Me.1990)

("We have previously recognized an exception to the prudential rule requiring an exhaustion of administrative remedies 'when the plaintiff's complaint alleges persuasive grounds for relief which are *beyond the jurisdiction of the administrative agency to determine,* and when it would be futile for the plaintiffs to complete the administrative appeal process.'"). Here, the Board does not have equitable jurisdiction to apply the doctrine of estoppel to its own decisions. *See Valente v. Board of Envtl. Protection,* 461 A.2d 716, 718 (Me.1983) ("Administrative agencies are creatures of statute, and can only have such powers as those expressly conferred upon them by the Legislature, or such as arise therefrom by necessary implication to allow carrying out the powers accorded to them."). No unfairness to the Board, therefore, results from finding an exception to our prudential rule requiring objections to be raised before the agency in order to be preserved for appeal.[11] Because we find that the Superior Court erred in confining plaintiffs to the administrative record on their estoppel claim, we remand for further proceedings.[12] When the court re-

9. Other cases in which we have found that a party failed to preserve an issue for review by not raising objections to the agency's practice at the administrative level include the following: In a license suspension case, we found that a motor vehicle operator had not raised the issue, at the administrative level, that fundamental fair play should keep out illegally seized evidence, and therefore had not preserved the issue for appeal. *Powell v. Secretary of State,* 614 A.2d 1303, 1307 (Me.1992). We found, in *Palesky v. Town of Topsham,* 614 A.2d 1307, 1309 (Me.1992), that plaintiff did not raise before the town personnel board her contention that if the termination of her employment was due to a lack of work or funds, the town personnel ordinance entitled her to a lay-off rather than termination. In an appeal of a denial of a liquor license renewal, we did not reach plaintiff's arguments that portions of the governing statute were unconstitutional and that the town denied the restaurant's owner due process of law because these arguments were not specifically raised before the Maine State Liquor Commission. *Oronoka Restaurant, Inc. v. Maine State Liquor Comm'n,* 532 A.2d 1043, 1045 n. 2 (Me.1987). In *Hale v. Petit,* 438 A.2d 226, 232 (Me.1981), plaintiffs raised for the first time on appeal their argument that an amendment to the National Health Planning and Resources Development Act required the Department of Human Services to provide trial-type procedures during review of certificate of need applications. We found that the applicability of

this amendment depended on a factual finding that should have been made at the administrative level. *Id.*

10. In *Minster,* we found that the trial court erred in stating as an alternative ground for summary judgment that plaintiff had failed to exhaust his administrative remedies when he did not appeal to the zoning board of appeals from the refusal to accept his second mobile home park application. 584 A.2d at 648. We explained our decision by noting that a zoning board of appeals does not possess the statutory authority to determine the validity of a legislative enactment, that an administrative appeal would not have resulted in any modification of the decision in light of plaintiff's objections, and that a plaintiff may file an independent civil action for a declaratory judgment concerning the validity or construction of a statute without first pursuing the administrative process. *Id.*

11. The issue of estoppel was explicitly raised in at least one of the administrative hearings but without full evidentiary development.

12. Furthermore, we reject the Board's contention that our decision in *Families United of Washington County v. Commissioner, Dep't of Mental Health and Mental Retardation,* 617 A.2d 205, 207 (Me.1992) ("Here, in the presence of a clearly stated appeal provision and in the ab-

quested plaintiffs to brief their arguments with regard to estoppel, an offer of proof was submitted that certain individual plaintiffs retired only because they were told by the MSRS that the payments for unused sick leave would be factored into their retirement benefit calculations. These plaintiffs later submitted affidavits to support their claims. We note that although the court granted summary judgment on the basis of the absence of reliance, it did not consider the affidavits, and in fact no party had moved for a summary judgment. Thus, we decline to consider the issue of a summary judgment in the abstract, but rather remand for further proceedings.

The entry is:

Judgment with respect to Count III estoppel claim vacated and remanded to Superior Court for further proceedings consistent with the opinion herein. In all other respects, judgment affirmed.

RUDMAN, DANA, and LIPEZ, JJ., concurring.

CLIFFORD, Justice, with whom ROBERTS and GLASSMAN, Justices, join dissenting.

In my view, the language of 5 M.R.S.A. § 17001 is clear that the payment of up to thirty days of accumulated sick leave constitutes earnable compensation, and does not support the construction placed on it by the Board. Accordingly, I respectfully dissent.

What constitutes "earnable compensation" is crucial to determining the average final compensation on which the retirement benefits of teachers is based. To determine the meaning of a statute, we look first to its language. *Porter v. Maine State Retirement Sys.*, 609 A.2d 1146, 1149 (Me.1992). At the time the plaintiffs retired, section 17001 provided:

"Earnable compensation" means salaries and wages paid for services rendered in an employment position, subject to the following inclusions, exclusions and limitations.

. . . .

B. "Earnable compensation" does not include:

(1) *Payment for more than 30 days of unused accumulated or accrued sick leave,* payment for more than 30 days of unused vacation leave or payment for more than 30 days of a combination of both;

(2) Any *other* payment which is not compensation for actual services rendered or which is not paid at the time the actual services are rendered; . . .

P.L.1989, ch. 800 (effective July 14, 1990) (codified as amended at 5 M.R.S.A. § 17001(13) (Supp.1994)) (emphasis added).

Section 17001(13)(B)(1) is not ambiguous. Subsection (B)(1) provides for the inclusion of up to thirty days of accumulated sick leave as earnable compensation by specifically excluding payment for *more* than thirty days. The exclusion in subsection (B)(2) is directed at any payment *other* than sick leave or vacation leave. Because the language is clear, there is no need to look beyond it. *Central Me. Medical Ctr. v. Maine Health Care Fin. Comm'n,* 644 A.2d 1383, 1386 (Me. 1994).

By construing the statute to mean that thirty days of accumulated sick leave paid as a retirement incentive could not be included

---

sence of a deliberate misrepresentation on the part of the State, the court committed no error in refusing to suspend a statute of limitations when it would disrupt an award of state contracts."), makes deliberate misrepresentation an essential element for finding equitable estoppel against the government. Although misleading conduct is required, such conduct need not be deliberate in the sense of intentionally misleading. *See Pino v. Maplewood Packing Co.,* 375 A.2d 534, 539 (Me. 1977) (stating, although not in a case of estoppel against a governmental entity, that it is not an essential element of estoppel that the party subjected to it knowingly or intentionally misled the other person). In *Families United,* we examined

the totality of circumstances involved, only one of which was the absence of deliberate misrepresentation, and found that the court properly concluded that estoppel should not be applied. 617 A.2d at 207. As we stated in *Raynolds,* "[t]he law of Maine is . . . that depending on the totality of the particular circumstances involved, which will include the nature of the particular governmental official or agency acting and of the particular governmental function being discharged as precipitating particular considerations of public policy, equitable estoppel may be applied to activities of a governmental official or agency in the discharge of governmental functions." 413 A.2d at 533.

as earnable compensation, the Board impermissibly writes into the statute a limitation that is not supported by its plain language. Such a construction is not conclusive on this Court. *Soucy v. Maine State Retirement Sys.*, 456 A.2d 1279, 1281 (Me.1983). Moreover, the "statutory definition must be interpreted in light of the objectives of the statute, [at least one of which] is to fulfill the 'legitimate retirement expectations of employees.'" *Huard v. Maine State Retirement Sys.*, 562 A.2d 694, 698 (Me.1989) (quoting *Soucy*, 456 A.2d at 1281). "What an employee may reasonably expect is consistency over the years in the definition of 'earnable compensation' used in administering the Maine State Retirement System." *Huard*, 562 A.2d at 698.

As authority for its action in denying benefits, the Board relies on a 1987 regulation that the Court acknowledges does not clearly support its position. It is not until 1992, after these plaintiffs had retired, that the Board promulgated a rule clearly providing that payment of up to 30 days of sick leave is not earnable compensation if paid as a retirement incentive.[1] The Board's interpretation not only is contrary to the plain language of the statute, but it undermines the employees' reasonable expectation of consistency and clarity in the definition of earnable compensation under the retirement statute. *Huard*, 562 A.2d at 698.

I would vacate the Superior Court judgment.

---

1. Likewise, section 17001(13)(B) has been amended, subsequent to the retirement of these plaintiffs, to provide that unused sick leave is not earnable compensation unless paid before an application for retirement benefits is made. P.L. 1991, ch. 432.