ENTERED FEB 2 7 2015

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-14-35  ✓
CMM-MMM—01-07-15

HUGHES BROS., INC.,  )
  )
  )
Plaintiff,  )
  )
  )
v.  )
  )
TOWN OF EDDINGTON,  )
  )
  )
Defendant.  )

FINDINGS AND ORDER FOR ENTRY
OF JUDGMENT ON COUNTS I AND II
OF PLAINTIFF'S COMPLAINT

## I.    INTRODUCTION

Before the Court are Counts I and II of Plaintiff's Complaint. Judgment on Count III was entered by the Court on August 7, 2014.[1] Plaintiff alleges in Count I that the Town conducted an illegal executive session on January 29, 2014. Count II is a Declaratory Judgment in which Plaintiff alleges that the Town adopted an illegal moratorium against a quarry owned by the Plaintiff in the Town of Eddington. The parties submitted a stipulated trial record in the form of a "Stipulated Timeline and Relevant Facts" dated September 29, 2014.[2] The parties also filed written arguments, the last of which was received by the Court on November 12, 2014.

The facts of this case are well set out in the stipulated record, and the Court herein adopts those facts as having been proven by a preponderance of evidence. While there

---

[1] A subsequent order captioned "First Order on Motion to Reconsider" was entered on August 13, 2014 that addressed certain documents that were omitted from the privilege log which was inspected by the Court in camera on Count III. The Court is advised that the Town has produced all documents ordered released by the Court in these two orders. The Court hereby corrects on its own motion the date "August 6, 2013" in paragraph one of the latter order which now will read "August 6, 2014."

[2] An amended stipulated record was filed October 14, 2014.

1

are certain paragraphs (see, e.g. paragraphs 12, 13, and 14) in the Stipulated Timeline that reference the ability of the parties to supplement the record, the parties confirmed with the Business and Consumer Court on January 2, 2015 that they would be relying on the Stipulated Timeline and Exhibits as the trial record. The Court has reviewed the stipulated trial record, considered the parties' written arguments, and issues the following findings and order for entry of judgment on Counts I and II.

## II.   FINDINGS AND CONCLUSIONS

### A.  COUNT I – Claim of Illegal Executive Session 1/29/14

On January 29, 2014 the Eddington Board of Selectmen and Planning Board conducted a joint executive session, ostensibly to consult with Town legal counsel pursuant to 1 M.R.S.A § 405(6)(D). Selectmen minutes from a "Special Joint Planning Board and Selectmen's Meeting" indicate the meeting was called to order at 5:45 p.m. Roll call was conducted and a motion was made and approved (3-0) to go into Executive Session. (Ex. 9.) By 7:07 p.m. a motion was made to return to Regular Session. The meeting adjourned at 7:08 p.m. The minutes further indicate that "Other Business" consisted of the following: "Moratorium Ordinance. No Action Taken." The meeting was adjourned at 7:08 p.m. *Id.*

Exhibit 10 contains the minutes from the Planning Board,[3] which met jointly with the Board of Selectmen. Again, it appears that the meeting began around 5:38 p.m., after which roll call was taken. The Board moved and approved the joint Executive Session, and Regular Session began again at 7:08 p.m.

_____

[3] These minutes are in the Court's view clearly labeled as Planning Board minutes. However, the Town's Attorney refers to these minutes as "the actual Selectmen's minutes" on page 8 of its Brief. The Court conferred with counsel by phone on December 23, 2014 and the parties agreed that Exhibit 9 represents the minutes of the Board of Selectmen, and Exhibit 10 represents the minutes of the Planning Board.

2

Plaintiff makes a number of arguments as to why this Executive Session was illegal. First, Plaintiff argues that the Town failed to follow Maine's Freedom of Access Act's ("FOAA") requirements for going into Executive Session, specifically as to the adequacy of the motion made. Second, Plaintiff claims that vote to go into the joint session by the Board of Selectmen was insufficient. Third, Plaintiff claims that the joint session was illegal. Fourth, the Plaintiff claims that during the Executive Session they deliberated on legislative matters and that this does not fall within any of FOAA's exceptions to the open meeting requirement. Fifth, Plaintiff claims that the moratorium at issue in the case was approved in the Executive Session.

i.     *Adequacy of the Motion for Executive Session*

Plaintiff contends that the motion made by both bodies (Board of Selectmen and Planning Board) insufficiently described the nature of the business to be conducted during the closed session. However, as the Town points out, a similar notice was upheld as sufficient by the Law Court in *Vella v. Town of Camden.* 677 A.2d 1051, 1055 (Me. 1996). In addition, given the clear notice from six days before, on January 23, 2014, there can be little doubt that the public was aware of the purpose of the Executive Session, which would be the "only thing on the agenda" for the January 29, 2014 meeting. (Ex. 8.) The Court is unpersuaded that the notice provided in the joint motion was legally insufficient.

ii.    *Adequacy of the Vote Taken by the Board of Selectmen to go into Executive Session*

Plaintiff argues that Exhibit 10 proves that there were not enough members from the Board of Selectmen to constitute a quorum or to vote to go into Executive Session, or that this exhibit when read in conjunction with Exhibit 9 raises questions as to whether

3

there were enough votes by Selectmen to authorize the session. However, as noted previously, the Court interprets Exhibit 9 to be the actual Board of Selectmen minutes as the members listed for the roll call (Brooks, Goodwin, Lyford) are the same Selectmen listed in Exhibit 7. The Court finds Exhibit 9 unambiguously establishes that that these three members voted to go into Executive Session, and so concludes that the Plaintiff's argument on this issue is without merit.

### iii.    *Legality of Joint Executive Session*

The Town rightfully notes that the Plaintiff cites no case law in support of its position that the joint Executive Session was not authorized by FOAA. However, the Court would note that the public was provided notice six days prior that the Town intended to follow this procedure (Ex. 8) so it could hardly be said this process was a secret from anyone. The Court would further note that Plaintiff seems to imply that if the two bodies conducted joint Executive Sessions that were otherwise independently legal, that would be permissible.

The Court, having found no improprieties in the procedure followed by both Boards as to notice and votes taken to go into Executive Session[4] concludes that the joint meetings were legal. The Plaintiff does not argue that the advice given to both Boards by the Town's attorney would have been different, and the Court concludes that under these circumstances no violation of FOAA has occurred.

### iv.    *The Subject Matter of the Executive Session*

The Court has reviewed 1 M.R.S.A §405(6)(E) and disagrees with Plaintiff's argument regarding the exceptions to Maine's open meeting law. Subsection E contains,

---

[4] The Plaintiff does not contest the legality of the votes taken by the Planning Board to go into Executive Session.

4

as the Town points out, a number of disjunctive clauses which include the following as a discreet exception: "[c]onsultations between a body or agency and its attorney concerning the legal rights and duties of the body or agency . . . ." The Court finds that the Town has met its burden to prove that the subject matter of the Executive Session (which was explicitly defined in the January 23, 2014 notice (Ex. 8) as a request for their attorney "to expand on the basis for his wording in the proposed Moratorium Ordinance") falls within this exception to Maine's open meeting requirement. *Underwood v. City of Presque Isle*, 715 A.2d 148 (Me. 1998).

### v. *Whether the Moratorium was Approved in the Executive Session*

The Plaintiff relies upon a statement made by the Planning Board Chairman at a Selectmen's Meeting on March 4, 2014 in which he mentions the Executive Session in question. He stated "questions were asked during it in order to help them decide on how to proceed with wording of such moratorium ordinance." (Ex. 15.) The Court construes this statement as entirely consistent with the publicly stated reason for the Executive Session, and concludes that this isolated statement does not support the argument that the Moratorium was actually approved in the Executive Session. To the contrary, other exhibits including Exhibits 15 indicate that the Selectmen sent the issue to a Town Meeting where the Moratorium was voted upon and approved by citizens of the Town.

### B. COUNT II – Challenge to Moratorium

Plaintiff raises a number of arguments regarding the Moratorium[5] enacted by the Town against quarry development, including that there was no basis for its enactment, but also that enacting a moratorium with retroactive effect violates Maine law given the

---

[5] The Town enacted the moratorium ordinance on April 8, 2014 at a Special Town Meeting. The six-month moratorium was extended on Sept. 23, 2014 by the Selectmen pursuant to 30-A M.R.S.A § 4356(3). (Exs. 27 and 27(A-D).)

5

plain language of the statute which states that a moratorium "may be adopted on an emergency basis and given immediate effect." 30-A M.R.S.A § 4301(11). The Town argues that the reasons asserted by proponents for the moratorium are sufficient justification for it, and also that a moratorium can be retroactive since it is defined in part as "a land use ordinance or other regulation," and under Maine law ordinances can be retroactive assuming certain criteria are met.

30-A M.R.S.A § 4356 establishes the requirements for imposition of moratoria by municipalities. It states, in applicable part, that the moratorium must be needed "[b]ecause the application of existing comprehensive plans, land use ordinances or regulations or other applicable law, if any, is inadequate to prevent serious public harm from residential, commercial or industrial development in the affected geographic area." Further, 30-A M.R.S.A § 4301(11) defines a moratorium as:

> [A] land use ordinance or other regulation approved by a municipal legislative body, that if necessary, may be adopted on an emergency basis and given immediate effect and that temporarily defers all development, or a type of development, by withholding any permit, authorization or approval necessary for the specified type or types of development.

*Id.*

i. *Retroactivity of Moratorium*

The Court could find no case in which the issue of retroactivity has been squarely addressed by the Superior Court or the Law Court. However, the statute by its own terms permits a municipality to withhold "any permit, authorization, or *approval* necessary for the specific type or types of development (emphasis added)." While the parties focus on the phrase "given immediate effect" the Court believes that the Town was allowed to withhold approval – by delaying finalization of the approval process -- during the moratorium period. The statute distinguishes among permits, authorization, and

6

approval, suggesting to the Court that they mean different things. A permit would be something that has already been granted, and approval suggests to the Court the process of obtaining a permit (or authorization). The Court concludes that the Town was entitled to stay or defer completion of the permit approval process by the express terms of this statute.

The Court also reads the phrase "given immediate effect" to mean just that. If a moratorium is duly approved, it takes immediate effect, and the 6-month clock starts running. The Court does not agree with the Plaintiff that this phrase prohibits "retroactivity" particularly where the Legislature has in the Court's view empowered municipalities to defer, temporarily, certain types of development "by withholding . . . approval" for a specified type of development.

It is quite understandable to the Court that the Plaintiff would be unhappy with the decision on "retroactivity" given assurances unfortunately made by some Town representatives. In addition, the imposition of the moratorium has no doubt created a financial burden and at least uncertainty for the Plaintiff. Such burdens and uncertainty are likely by-products of any moratorium, however, which is why the Legislature has strictly time-limited them. The Court trusts that the Town understands that this moratorium cannot act as a permanent end-run around fair consideration of Plaintiff's permit application, but the extended moratorium will soon expire, and the Plaintiff can press forward at that time.

ii.    _Sufficiency of Evidence to Justify the Moratorium_

Plaintiff's final argument is that there is insufficient evidence in the record justifying the imposition of a moratorium on quarries. However, it is the Plaintiff's

7

burden to "establish the complete absence of any state of facts that would support the need for a moratorium." *Minster v. Town of Gray*, 584 A.2d 646, 649 (quoting *Tisei v. Town of Ogunquit*, 491 A.2d 564, 569 (Me. 1985). It is clear to the Court based on the stipulated record that there was significant opposition to the quarry from members of the Town, and they articulated their reasons for their positions. These reasons included effects on air quality, water quality, traffic, and property values. One could reasonably disagree with the reasons asserted by the quarry opponents, as well as their view of what is best for the Town. However, proponents of the quarry were also given an opportunity to make their case and to provide justification for their positions, and a vote was taken.

Fundamentally, it would not be appropriate for this Court to inject itself into this sort of legislative process given the ample opportunity provided to both sides to make their case in an open process. Disagreement with the outcome of the vote is not equivalent to establishing "the complete absence of any state of facts" supporting this moratorium.

## III.    CONCLUSION

Based on the foregoing the entry will be:

Judgment on Counts I and II entered for Defendant, Town of Eddington.


_____ 7/15
DATE

_____
JUSTICE, BUSINESS AND
CONSUMER COURT


Entered on the Docket: 1/7/15
Copies sent via Mail___ Electronically ✓

8

**Hughes Bros., Inc. v. Town of Eddington**
**BCD-CV-14-35**


**TD Bank, N.A.**

    **Plaintiff**

        Counsel:               William Devoe, Esq.
                             80 Exchange St.
                             PO Box 1210
                             Bangor, ME 04402-1210


**Tuscon, Inc., More Properties, Inc., Craig D. Morency and Scott P. Morency**

    **Defendants**

        Counsel:               Charles Gilbert, III, Esq.
                             82 Columbia St.
                             PO Box 2339
                             Bangor, ME 04402-2339