MAGNETIC RESONANCE TECHNOL-
OGIES OF MAINE LIMITED
PARTNERSHIP, et al.,

v.

COMMISSIONER, MAINE DEPART-
MENT OF HUMAN SERVICES.

Supreme Judicial Court of Maine.

Argued Nov. 15, 1994.
Decided Jan. 19, 1995.

---

Andrew M. Gattine (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Magnetic Resonance Technologies of Maine Limited Partnership, by and through its general partner Magnetic Resonance Technologies General Partnership, [hereinafter "the Partnership"], appeals from the judgment entered in the Superior Court (Penobscot County, *Pierson, J.*) affirming the decision of the Commissioner of the Department of Human Services [hereinafter "Commissioner"] to deny the Partnership's request for a Certificate of Need [hereinafter "certificate"]. The Partnership claims that a variety of procedural irregularities and substantive errors require that we vacate the judgment of the Superior Court. We disagree and affirm the judgment.

## I. *Background*

The Partnership is a limited partnership that proposed to acquire a mobile magnetic resonance imaging machine to provide services to communities in northern Maine. In response to the Partnership's application for a certificate, required by 22 M.R.S.A. §§ 301–324 (1992), the division of Program Analysis and Development [hereinafter "the division"] of the Department of Human Services [hereinafter "the department"] initially recommended disapproval of the project. The division found that there was no demonstrated need for the development of another mobile unit in the same service area, and that the economic feasibility of the project was suspect because of the potential for anticompetitive effects. The Partnership requested and was granted an indefinite suspension of its certificate application in order to prepare an amendment to it.

After the submission of the Partnership's amended certificate application, the division recommended approval to the Commissioner. In its letter of recommendation, the division noted its prior disapproval of the project. It asserted, however, that the amended applica-

John P. Doyle, Jr. (orally), Charles F. Dingman, Preti, Flaherty, Beliveau & Pachios, Augusta, Nicholas P. Brountas, Louise M. Davis, Vafiades, Brountas & Kominsky, Bangor, for plaintiffs.

tion was responsive to the concerns cited in the preliminary analysis of the original application.

The Commissioner remanded to the division, requesting additional information on the Partnership's application. The division supplied the information and once again recommended approval of the certificate. The Commissioner nevertheless disapproved the Partnership's application for a certificate, stating in her decision letter that she was unable to find that there was a public need for the proposed services or that the services proposed by the Partnership were economically feasible.

The Partnership sought review of the decision of the Commissioner by the Superior Court pursuant to M.R.Civ.P. 80C. The court affirmed the decision to deny the certificate. This appeal followed.

## II. *Procedural Issues*

 The Partnership contends that the Commissioner improperly remanded to the division for additional information and that the requested information should not have been part of the record before the Commissioner. The Partnership further complains that, because it is not a "health care facility," the Commissioner erred on remand in asking it to provide information on the issue of capital expenditures. We find no procedural error in the Commissioner's actions. Moreover, since the Partnership has conceded that the information provided to the Commissioner after remand was actually beneficial to it, any error in the remand was harmless. M.R.Civ.P. 61; M.R.Civ.P. 80C(a); 5 M.R.S.A. § 11001 (1989).

 The Partnership insists that its initial application was superseded by the amended application, and that its initial application was improperly considered by the Commissioner during the course of her review of the record. We disagree. The Commissioner is required to approve or deny each application for a certificate based on the informational record developed in the course

of review. 22 M.R.S.A. § 307(5–A)(B). The "informational record developed in the course of review" is defined in 22 M.R.S.A. § 307(5–A)(C), which provides that "all applications" shall be considered part of the informational record.[1] The statutory language contemplates the submission and consideration of an initial application and an amended application.

The Maine Certificate of Need Procedures Manual specifically provides for the amendment or the complete withdrawal of an application. The Partnership did not withdraw its initial application. Under these circumstances, the Department was entitled to consider the initial and amended application as part of the record.

 The Partnership's procedural rights were not compromised when the Commissioner delayed making her decision until April 15, 1993. Pursuant to statutory guidelines, her decision was to be rendered no later than October 30, 1992. However, the review period of 22 M.R.S.A. § 307 is directory rather than mandatory. *Bradbury Memorial Nursing Home v. Tall Pines Manor*, 485 A.2d 634, 640–41 (Me.1984) ("Those time periods of the Certificate of Need Act serve the hortatory purpose of curbing bureaucratic delay...."). The Partnership could have petitioned the trial court to order the department to render its decision at an earlier date if it felt prejudiced by the delay. Correspondence directed to the department indicates that the Partnership was aware of this option and chose not to exercise it. The Partnership cannot complain about the delay now when its true unhappiness is with the substance of the Commissioner's decision.

 The Partnership contends that the Commissioner erred in failing to discuss her rejection of the division staff analysis in her decision. Such an explanation is not mandated by the statute. 22 M.R.S.A. § 307(5–A)(B) provides that if the decision of the Commissioner "is not consistent with the recommendations of the Certificate of Need Ad-

---

1. It is possible that the word "applications" appears in the plural in anticipation of a competitive review cycle, of which this is not one. The department does not, however, construe the statute in such a way and deference should be given to its construction. *Abbott v. Commissioner of Inland Fisheries & Wildlife*, 623 A.2d 1273, 1275 (Me.1993).

visory Committee, the commissioner shall provide a detailed statement of the reasons for the inconsistency." In the instant case, however, there was no advisory committee, and there is no statutory directive requiring the Commissioner to explain any disagreement with the recommendations of her staff.

### III. *Substantive Issues*

The Partnership bore the burden of proof in making the requisite showings of public need and economic feasibility. The Commissioner determined that the Partnership did not meet its burden. On appeal, we will reverse only if the record compelled a contrary conclusion by the Commissioner. *Foley v. Adam,* 638 A.2d 718, 719 (Me.1994); *Dawson v. Lussier,* 632 A.2d 128, 129 (Me. 1993). As this is an appeal from an intermediate appellate review of an administrative decision, we review the agency decision directly. *Wood v. Superintendent of Insurance,* 638 A.2d 67, 70 (Me.1994); *International Paper Co. v. Board of Envtl. Protection,* 629 A.2d 597, 599 (Me.1993).

### *Public Need*

Pursuant to 22 M.R.S.A. § 309(1)(C), a certificate shall be issued, *inter alia,* whenever the department determines that "there is a public need for the proposed services...." In notifying the Partnership of her denial of its application for a certificate, the Commissioner stated:

> While I agree that there is room to improve access to the services being proposed, I also find that there is no evidence in the record indicating that persons in the region are without the ability to access existing services. I find there is no absence of the service to the people in the region which [sic] would be the real need.

The evidence in the record does not compel a result contrary to that reached by the Commissioner.

Although several hospitals wrote letters in support of the Partnership, none of the letters stated that their patients were going without or dangerously postponing MRI procedures. Several providers have excess capacity and are willing to serve the area in question. In addition, the Commissioner found, and the Partnership conceded, that MRIs are usually non-emergency procedures done on an outpatient basis. Arguably, there is no need for extra MRI units when already underutilized machines are available to users who are primarily outpatients.

### *Economic Feasibility*

The Commissioner is charged, *inter alia,* with determining prior to issuing a certificate "[t]hat economic feasibility of the proposed services is demonstrated in terms of ... the projected impact on the facility's costs and rates and the total health care expenditures in the community and the State...." 22 M.R.S.A. § 309(1)(B). The Commissioner stated in her decision:

> I find no need to invest in new major medical equipment at this time. Further, utilizing existing resources at a greater level than currently existing might allow charge-based payors to negotiate discounts which otherwise might not be available to units with unused capacity, thus saving scarce health care dollars. *During this extreme budget crisis I believe that there are existing providers of MRI services that have unused capacity that could respond to these additional services demands without necessitating additional capital costs of the magnitude being proposed.* (emphasis added).

The record supports the simple proposition that the faster the fixed or capital costs of a provider of MRI services are recovered, the more likely the prospect that such a provider will be willing to discount fees through negotiations with charge-based payors. The Commissioner acted well within her authority in focusing on this relationship between underutilized capacity and the total health care expenditures in the community. The record certainly did not compel a contrary finding on the issue of economic feasibility.

The Partnership's remaining contentions are without merit.

The entry is:

Judgment affirmed.

All concurring.