### CITY OF PORTLAND, et al.

v.

### PUBLIC UTILITIES COMMISSION.

Supreme Judicial Court of Maine.

Argued March 13, 1995.

Decided April 26, 1995.

---

Kimball L. Kenway (orally), Curtis Thaxter Stevens Broder & Micoleau, Augusta, for Cities.

Michael T. Healy (orally), Verrill & Dana, Portland, for Portland Water Dist.

Lisa C. Fink (orally), Staff Atty., Public Utilities Com'n, Augusta.

Joseph G. Donahue (orally), Deirdre M. O'Callaghan, Preti, Flaherty, Beliveau & Pachios, Augusta, for Towns.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and RUDMAN, JJ.

RUDMAN, Justice.

The cities of Portland and South Portland (the cities) appeal from the Public Utilities Commission (the Commission) decision rejecting the Portland Water District's plan to impose a 37% rate differential between the cities and the towns it serves (Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham) as unjust and unreasonable, and reducing the rate differential to no more than 15%. Because the cities have failed to establish that the Commission has committed legal error and because the rate differential set by the Commission is reasonable, we affirm the decision.

Operating as a quasi-municipal water utility, the Portland Water District has had, with the approval of the Commission, a long history of maintaining a multi-tier rate structure. Despite the fact that the Commission has, on several occasions, advised the District that with the changes in growth and consumption among the cities and towns, the multi-tier rate structure could become inequitable, the District has continued to set differential rates based on a municipality's classification as a city or a town. In Phase I of this rate case, the Commission in its order of May 1992 again questioned the rate differential. In its Phase II order of February 1994, the Commission, concerned with intra-divisional fairness and equity, found that the District's proposed rate design was not reasonable because it produced a diverging rather than converging rate differential. The Commission then substituted its own increases while still finding that some city/town cost distinction was reasonable. No appeal was taken from this Phase II order.

Finally, in Phase III, the Commission again found the rate differentials proposed by the District to be unreasonable. It found that "[n]otwithstanding the persistence of *some* cost differences in serving the Cities and Towns ... that a mechanical use of the existing difference to determine the difference between the town and city rates would not be just and reasonable." The Commission proposed a reduction in the differential to no more than 15% between the city rate and the rate for any town. This appeal followed.

I.

 The Cities argue that the District, a creature of the Legislature, has unique authority, and therefore, deserves special deference from the Commission. They contend that the language of an earlier version of the District's charter established a special deference to their rate making. The language stating that all increases were subject to Commission approval was removed from the charter in 1976. The absence of this language, however, does not signify any limitation on the Commission's general authority over utility rates delegated to it by our Legislature in 35–A M.R.S.A. §§ 301–312 (1988 & Supp.1993).

 We have long recognized that the regulation of public utilities is a function entirely within the authority of the Public Utilities Commission. 35–A M.R.S.A. § 103(2)(A) (1988); *New England Tel. and Tel. Co. v. Pub. Util. Comm'n,* 470 A.2d 772, 778 (Me.1984) (regulation of the public utilities is a function of the Legislature which has delegated its entire authority in the matter to the Public Utilities Commission); *Kennebunk, Kennebunkport & Wells Water Dist. v. Town of Wells,* 128 Me. 256, 147 A. 188, 189 (1929) (finding every quasi-municipal corporation serving the public is a "public utility" subject to the control of the Commission). The District's charter does not compel us to retreat from that general rule.

When the Legislature has intended to limit the authority of the Commission, it has explicitly indicated that intent. In *Auburn Water Dist. v. Pub. Util. Comm'n,* 156 Me. 222, 163 A.2d 743 (1960), that district's charter specifically identified a rate to be charged. We treated the district's charter as a legislative limitation on the authority delegated to the Commission by the Legislature and held that because the charter explicitly provided a rate, the Commission was required to accept that rate. *Auburn,* 163 A.2d at 745. No such explicit language exists in the charter of the Portland Water District.

II.

The Commission has the authority to review proposed rates of a public utility as provided by Title 35–A. If, after a public hearing, the Commission finds that the rates are unjust, unreasonable, insufficient or unjustly discriminatory, the Commission may fix and order a substituted just or reasonable rate. 35–A M.R.S.A. §§ 310, 1306(1) (1988).

 The two basic tenets of appellate review of rate-making procedures are (1) that the Commission, not the Court, is the judge of the facts, and (2) that the Commission's findings of fact are final when supported by substantial evidence on the record. *New England Tel. & Tel. Co. v. Pub. Util. Comm'n,* 448 A.2d 272, 278 (Me.1982). The

Court's review is further limited by the institutional deference it pays to the Commission's expert judgment in choosing among the various ratemaking methodologies. *New England Tel. & Tel. Co.*, 448 A.2d at 279. Therefore, in reviewing the decisions concerning the Commission's rate-making, we accord considerable deference to the Commission, reviewing whether the Commission's methodology and result were reasonable and supported by substantial evidence. *Maine Water Co. v. Pub. Util. Comm'n*, 482 A.2d 443, 451 (Me.1984); *Mars Hill & Blaine Water Co. v. Pub. Util. Comm'n*, 397 A.2d 570, 575–76 (Me.1979). Only when the Commission abuses its discretion or fails to follow the mandates of either the Legislature or the prohibitions of the constitution can we intervene. *New England Tel. & Tel. Co.*, 448 A.2d at 279.

■ On appeal by the utility from a proceeding in which the public utility had the burden of proving that its proposed rate change is just and reasonable, the burden remains on the utility to demonstrate that the Commission has committed legal error. 35–A M.R.S.A. § 1314(1) & (2) (1988); *New England Tel. & Tel. Co.*, 448 A.2d at 278. We will reverse on appeal only if the record compels a contrary conclusion by the Commission. *Magnetic Resonance Technologies of Maine Ltd. Partnership v. Comm'r, Maine Dept. of Human Servs.*, 652 A.2d 655, 659 (Me.1995). Here it does not.

■ The Cities argue that classification of water service in accordance with municipal or territorial boundaries is reasonable based on the long history of its rate differentiation. However, the Commission's determination of reasonableness is individualized and must be made according to the facts and circumstances of each particular rate case. *New England Tel. & Tel. Co. v. Pub. Util. Comm'n*, 390 A.2d 8, 55 (Me.1978). We have previously held that the fact that a utility has been operating under rates previously approved by the Commission as reasonable does not preclude the Commission from conducting further inquiry into the justness and reasonableness of such rates at a later date. *Cent. Maine Power Co. v. Maine Pub. Util. Comm'n*, 395 A.2d 414, 434 (Me.1978). Thus, here, approval of the rate structure in a prior rate case does not restrict the Commission from later determining that the rate plan before it is unreasonable.

■ Nor do the Cities persuade us that the cost of service study ordered by it and prepared by John Palko compelled the Commission to find to the contrary. Palko's own testimony damaged the reliability of his conclusions. Palko's study allocated costs on the basis of the cost to distribute the water to the various municipalities, yet Palko conceded before the Commission that at times a municipality is charged with the cost of a water main it does not utilize. Moreover, Palko testified that the city/town rate differentiation is derived from a mechanical distinction based solely on political boundaries rather than on the actual costs associated with servicing the various communities.

The record firmly supports that the Commission, as the factfinder, was entitled to find the District's plan unreasonable. Several of the witnesses criticized Palko's methodology for failing to consider the functional costs of providing water to the various users and offered their own methods of allocating costs taking into account actual use and demand statistics.

■ On appeal, the Cities maintain the onerous burden of showing that the Commission was compelled to come to a different conclusion. *See Magnetic Resonance*, 652 A.2d at 659. In its order of February 1994, the Commission expressed concern with the failure of the District plan to consider the differences that might exist among the different cities and among the different towns to warrant separate rather than group classification, and the Cities have failed to point us to evidence in the record that might mitigate that concern. Thus, we must let the decision of the Commission stand.

### III.

After rejecting the District's rate plan, the Commission ordered the District to reduce the differential rates between the cities and the towns from the proposed 37% to no more than 15%.

The Commission heard evidence that some differential in distribution costs continues to exist. The Commission Staff's expert witness, John Russell, testified that an 11% cost differential in services currently exists between the cities and the towns.

 "If after a formal public hearing the Commission finds that the rates ... are unjust, unreasonable, insufficient or unjustly discriminatory ..., it may fix and order substituted just or reasonable rate or rates...." 35–A M.R.S.A. § 1306(1). *New England Tel. & Tel. Co. v. Pub. Util. Comm'n,* 362 A.2d 741, 754 (Me.1976). The Commission is obligated to ascertain the most reasonable rate from the range of rates that may be considered just and reasonable. *Cent. Maine Power Co. v. Pub. Util. Comm'n,* 455 A.2d 34, 39 (Me.1983). We will not disturb the Commission's rate as long as it is within a range of reasonableness supported by sufficient evidence. *Id.*

 The Cities suggest that the 15% rate is unreasonable because the 15% rate was "rate splitting," a compromise between Russell's 11% and Palko's 37%. In *Casco Bay Lines v. Pub. Util. Comm'n,* 390 A.2d 483, 489 (Me.1978), we cautioned the Commission against partaking in rate setting in which it does not exercise its own expertise and judgment in the ratemaking proceedings, but rather merely "splits the difference" whenever its Staff and the utility disagree. We directed that rate splitting is only forbidden when it involves a mechanistic division of the rates proposed by the various parties without the Commission utilizing its own expertise. *Casco Bay Lines,* 390 A.2d at 488–89. Given the evidence in the record and the reasoned opinion of the Commission, there is no indication that the Commission mechanically split the difference between the two proposals without its own independent consideration.

 The Cities further contend that 37% was recognized by the Commission to be the high end of the range of reasonable rates, and therefore, the Commission reasonably could have accepted the 37%. Even if the Commission had accepted the 37% as the high end of the range of reasonable rates, the Commission is obligated to ascertain the

most reasonable rate from that acceptable range. *Cent. Maine Power Co. v. Pub. Util. Comm'n,* 405 A.2d 153, 182 (Me.1979). It would not have been obligated to accept the 37% as the most reasonable. *See Cent. Maine Power Co.,* 405 A.2d at 182. In fact, having disagreed with portions of the cost accounting methodology, the Commission could not have found the 37% the most reasonable of the rates in the range. Therefore, we cannot say that the 15% rate was an abuse of discretion.

The entry is:

Decision affirmed.

All concurring.