STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-02

DHN - KEN - ᴄᴦᴏ

WESTERN MAINE CENTER
FOR CHILDREN,

       Petitioner

    v.

DEPARTMENT OF HUMAN
SERVICES,

       Respondent

    v.

COMMUNITY CONCEPTS, INC.,

       Intervenor

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

AUG 6 2003

This matter is before the court on intervenor's motion to dismiss petitioner's M.R. Civ. P. 80C appeal.

The petitioner, Western Maine Center for Children (petitioner or WMCC) seeks review of the December 11, 2002 decision of the Appeal Panel denying petitioner's appeal of the awarding of two grants by the Department of Human Services to Community Concepts, Inc. ("CCI").[1] The appeal was filed pursuant to 5 M.R.S.A. § 1825-E and Chapter 120 of the Rules of the Division of Purchases, Department of Administrative and Financial Services ("Rules").

DHS and the Administration for Children and Families ("ACF") issued a joint request for proposals, seeking a grantee to receive Head Start, Early Head Start, and Child Care Funds, per an agreement between DHS and ACF dated May 10, 2000. Petitioner and CCI were the only agencies to submit proposals. Five reviewers

---

[1] CCI was granted status as an intervenor on October 18, 2002.

evaluated the two proposals at the ACF office in Boston. The ACF's Regional Administrator initially adjudged petitioner the most qualified applicant, and proposed awarding the funding to petitioner. The recommendation was rejected, and the contracts awarded to CCI. Petitioner filed an administrative appeal of the decision. In its petition, the petitioner alleges it was denied due process in the appeal process; the Appeal Panel's findings were in error; the Panel misapplied Maine law regarding the awarding of the contract to the highest rated proposal; request for applications were not submitted to the Contract Review Committee as required by Rule 110; the review and scoring process did not conform to Rule 110; Rule 110 does not provide a sufficient procedure for reviewing competitive bids as required by 5 M.R.S.A. § 1825-D; and the entire process was arbitrary, capricious, and fundamentally unfair. CCI moves to dismiss the 80C Petition.

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the allegations in a complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993). In ruling on a 12(b)(6) motion to dismiss, the court should "consider the material allegations of the complaint as admitted and review the complaint in the light most favorable to the plaintiffs to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiffs to relief pursuant to some legal theory." *Bussell v. City of Portland*, 1999 ME 103, ¶ 1, 731 A.2d 862. "A dismissal is appropriate only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Dexter v. Town of Norway*, 1998 ME 195, ¶ 7, 715 A.2d 169, 171. The legal sufficiency of a complaint is a question of law. *Sargent v. Buckley*, 1997 ME 159, ¶ 10, 697 A.2d 1272, 1275.

2

CCI moves to dismiss the 80C petition, alleging that petitioner fails to properly invoke the Superior Court's jurisdiction by failing to name the Appeal Panel ("Panel") and the Bureau of General Services ("BGS") as defendants. CCI relies on 5 M.R.S.A. § 1825-B to point out that the Director of the Bureau of General Services has the direct responsibility and authority for making purchases of goods or services needed by the State or any department or agency of the State through competitive bidding. It also cites chapter 110 of the Rules of the Department of Administrative and Financial Services, Division of Purchases, giving the Bureau responsibilities for conducting the competitive bid process and making purchases. The intervenor argues that the Director of BGS is a direct party to the contract being challenged and BGS is the sole necessary and indispensable respondent from this appeal of its final agency action. The crux of CCI's argument is that, because BGS appointed the Panel, the Panel acted as an "arm" of BGS and BGS is therefore a required party to this petition.

Petitioner opposes the motion to dismiss, maintaining that BGS is not a necessary party because it's only role was to select the Panel; it had no part in handling the process of selecting CCI and was not a party to the prior appeal. In the event the court determines BGS is a necessary party, petitioner contends that it should be permitted to amend the original petition.[2] DHS also opposes the motion to dismiss, asserting that the appeals panel acted in a purely adjudicatory role. DHS emphasizes that the Law Court has repeatedly held that an agency that performs a purely adjudicatory function is not a proper party to an appeal from a decision made by that agency. The issue is whether BGS is a required party to this petition.

---

[2] The court should note that Petitioner's response to this motion was filed one day late of the February 20, 2002 deadline, as prescribed by M.R. Civ. P. 7(c). CCI points this out in its Reply Brief, arguing that Petitioner's response should therefore be stricken and the Petitioner deemed to have waived all objections to the motion pursuant to Rule 7(c)(3). Rule 7(c)(3) provides that "a party failing to file a timely memorandum in opposition to a motion shall be deemed to have waived all objections to the motion."

Any person aggrieved by final agency action is entitled to judicial review under the Administrative Procedures Act ("APA") by proceeding in the manner provided by 5 M.R.S.A. §§ 11001-11008. *See* 5 M.R.S.A. § 11001. The court is limited to remanding the matter or affirming, reversing, or modifying the agency's decision. 5 M.R.S.A. § 11007(4).

Title 5 M.R.S.A. 1825-E governs the competitive bid process for the state, the government, and their agencies; decisions by an appeal committee under § 1825-E constitute final agency action on the petitioner's appeal for the purposes of judicial review. *See* 5 M.R.S.A. § 1825-F. Pursuant to § 1825-E, the Director of BGS determines whether a person allegedly aggrieved by an agency contract award decision is granted an appeal hearing. *Id.* The appeal committee or panel consists of three members: two appointed by the Commissioner of Administrative and Financial Services (excepting anyone with a direct or indirect personal, professional, or financial conflict of interest in the appeal or any employee from any department affected by the contract). *Id.* The third member is the Director of BGS or the Director's designee. *Id.* The appeal panel can validate or invalidate the contract award; it may not modify or make a new contract award. *Id.*

"An agency that performs a purely adjudicatory function is not a proper party to an appeal from a decision made by that body." *Bureau of Taxation v. Town of Washburn,* 490 A.2d 1182, 1184 (Me. 1985)(*citing Rice v. Amerling,* 433 A.2d 388, n.1 (Me. 1981); *Town of Boothbay Harbor v. Russell,* 410 A.2d 554, 560-61 (Me. 1980)). An agency charged with administering or enforcing a statute, however, is entitled to participate in proceedings reviewing its actions by reason of interest in defending its policies as reflected in its actions. *Id.* (citations omitted).

4

Here, CCI cites to Chapter 110 of the Rules of the Department of Administrative and Financial Services ("Rules"), Division of Purchases, to assert that BGS has the authority to conduct the competitive bid process and make purchases for the state, including reviewing, finalizing, and executing the contracts. *See* Rules at 18-554-110(3)(B). However, the fact that BGS has the authority does not mean that it exercised such authority. Petitioner argues that BGS did not conduct the competitive bid process in this case. Rather, BGS's role was to select the Panel. There is no evidence that BGS conducted the bid process or reviewed, finalized, or executed the contract; nor is there evidence that BGS was a party to the appeal. *See McElroy v. State Employee Appeals Board*, 427 A.2d 958 (Me. 1981). *McElroy* held that the State Employee Appeals Board was not a proper party to a petition challenging its original decision because it served a purely adjudicatory role by rendering decisions on grievances and disputes. *Id.* at 960. Also, the board's governing statutes in *McElroy* gave it no prosecutorial powers or enforcement responsibilities. *Id.* Thus, the court determined that the proper parties to the petition were those who participated in the hearing before the appeals board. *Id.*

There is no evidence or allegation that the Panel is able to administer or enforce a statute. The Panel has no prosecutorial powers or enforcement duties. The Panel was organized solely to adjudicate Petitioner's grievance. The governing statute regarding the appointment and functions of the Panel provides only adjudicatory duties and powers. *See* 5 M.R.S.A. § 1825-E.[3]

Even were the court to determines BGS to be a required party, the court believes that amendment to a petition would be allowed notwithstanding despite BGS not being

---

[3] The court should also note that the requirement of notice to the agency that issued the decision (per 5 M.R.S.A. § 11003(1)(A) does not make the agency a necessary party to the proceeding in Superior Court. *See Shawmut Inn v. Inhabitants of the Town of Kennebunkport*, 428 A.2d 384, 388-389 (Me. 1981).

served within the prescribed time. There is no Maine case law holding that an 80C petition should be dismissed because the wrong agency is named or served as a party.[4] A substitution of state agencies should not result in dismissal of the appeal. *See Town of Ogunquit v. Dept. of Public Safety*, 767 A.2d 291 (Me. 2001); *Bureau of Taxation v. Town of Washburn*, 490 A.2d 1182, 1185 (Me. 1985). *Town of Ogunquit* emphasizes that excessive or unreasonable delay in service of process may be grounds for dismissal unless shown to be a result of mistake or excusable neglect. *Id.* (citations omitted).

The entry will be:

Intervenor's motion to dismiss is DENIED.

Dated: June___6___, 2003

Donald H. Marden
Justice, Superior Court

---

[4] CCI refers the court to *Garland v. Sherwin*, 2002 ME 131, ¶ 1, 804 A.2d 354, 355, to argue that the court should not permit amendment of the petition at this time because a notice of claim to BGS would now be untimely. *Garland*, however, is a malpractice action – not an action dealing with an 80B or 80C petition and the requirements pertaining thereto – and the basis for the court's holding was that there was no evidence the proper defendant had any notice of the institution of the action within the time period of the service and summons. CCI fails to allege that, in this case, BGI lacked notice of the original complaint.

Date Filed __1/10/03__ __Kennebec__ Docket No. __AP03-02__
County

Action __Petition for Review__
80C

__Western Maine Centers for Children__ vs. __Department of Human Services & Community__

| Plaintiff's Attorney | Defendant's Attorney Concepts, Inc. |
|---|---|
| Jon R. Doyle, Esq.<br>Richard H. Thompson, Esq.<br>150 Capitol Street<br>Augusta, Maine 04330 | - Michelle Roberts, AAG<br>6 State House Station<br>Augusta, Maine 04333-0006<br>- Marc Frenette, Esq. (CCI)<br>95 Main Street<br>P.O. Box 3200<br>Auburn, Maine 04212-3200<br>Bryan M. Dench, Esq. |

| Date of Entry | |
|---|---|
| 1/10/02 | Petition for Review of Final Agency Action Pursuant to Rule 80(c), Maine Civil Rules of Civil Procedure, filed. s/Doyle, Esq.  s/Thompson, Esq. |
| 1/30/03 | Letter entering appearance, filed. s/Robert, AAG<br>Appearance and Statement of Position of Intervenor Pursuant to 5 M.R.S.A 11005 and Me.R.Civ. P. 80C, filed. s/Dench, Esq.  s/Frenette, Esq.<br>Intervenor's Motion to Dismiss Petitioner's Me.R.Civ. P. 80C Appeal with Incorporated Memorandum of Law, filed. s/Dench, Esq.<br>Proposed Order and Decision on Intervenor's Motion to Dismiss Petitioner's Me. R. Civ. P. 80C appeal, filed. |
| 2/7/03 | Certified Administrative Record, filed. s/Richard Thompson, Director<br>**( 3 blue notebooks in vault on back shelf)** |
| 2/20/03 | Respondent's Response to Intervenor's Motion to Dismiss, filed. s/ Robert, AAG |
| 2/21/03 | Petitioner's Opposition to Intervenor's Motion to Dismiss with Incorporated Memorandum of Law, filed. s/Thompson, Esq.<br><br>Notice of setting for ___4/2/03___<br><br>sent to attorneys of record. |
| 2/27/03 | Intervenor's Reply Memorandum in Support of its Motion to Dismiss Pettioner's Me.R.Civ.P. 80C Appeal, filed. s/Dench, Esq. |
| 4/2/03 | Hearing had on Motion to Dismiss with Hon. Justice Donald Marden, presiding. Jon Doyle, Esq. for the Plaintiff, Michelle Robert, AAG for the Department of Human Services and Bryan Dench, Esq. for Defendant, Community Concepts. Oral arguments made to the court.  Court to take matter under advisement. |
| 6/6/03 | DECISION AND ORDER,  Marden, J.<br>Intervenor's motion to dismiss is DENIED.<br>Copies mailed to attys. of record.<br>Copies mailed to GARBRECHT LAW LIBRARY, DEBORAH FIRESTONE AND GOSS MINIEGRAPH |

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-02

DHM - KEN - 4/5/2004

WESTERN MAINE CENTERS
FOR CHILDREN,

      Petitioner

      v.

DEPARTMENT OF HUMAN
SERVICES,

      Respondent

      and

COMMUNITY CONCEPTS, INC.,

      Party-in-Interest

**DECISION AND ORDER**

RECEIVED

MAY 28 2004

This matter is before the court on M.R. Civ. P. 80C petition for review. The petitioner, Western Maine Center for Children (petitioner or "WMCC") seeks review of the December 11, 2002 decision of the Appeal Panel of the Director of General Services denying petitioner's appeal of the awarding of two grants by the Department of Human Services to Community Concepts, Inc. ("CCI"). The appeal was filed pursuant to 5 M.R.S.A. § 1825-E and Chapter 120 of the Rules of Division of Purchases, Department of Administrative and Financial Services ("Rules).

DHS and the U.S. Administration for Children and Families (ACF") issued a joint request for proposal, seeking a grantee to receive a Head Start, Early Head Start, and Child Care Funds, per an agreement between DHS and ACF dated May 10, 2000. Petitioner and CCI were the only agencies to submit proposals. Five reviewers evaluated the two proposals at the ACF office in Boston. The ACF's Regional Administrator initially adjudged petitioner the most qualified applicant, and proposed

"Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.*

Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies). "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau*, 684 A.2d 1304, 1306 (Me. 1996) (emphasis added).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n*, 684 A.2d at 1306 (citing *Centamore v. Department of Human Services*, 664 A.2d 369, 370 (Me. 1995)).

The first of petitioner's arguments in its petition for review of its administrative appeal relates to discrepancies in the bidding process. Petitioner states that the process for purchasing services and awarding contracts that govern this matter are contained in Department of Administrative and Financial Services regulations titled "Rules for the Purchase of Services and Awards." CMR 18-554-110 ("chapter 110"). Petitioner points to four subsections of this regulation that they maintain were not followed.[1]

Pursuant to section 2A(ii) of chapter 110, petitioner maintains that the Request for Proposal ("RFP") was not approved by the Contract Review Committee as required

---

[1] The second subsection cited by petitioner as "Section 2A(IV)" is actually § 2(v). Respondent cites correct section in their reply brief.

by this section. Respondent admits that there is no documentation that the RFP was ever reviewed by the Contract Committee. Nevertheless, argues respondent, the RFP (sometimes referred to by the alternate acronym "RFA" – request for applications) that DHS and ACF issued did incorporate the evaluation criteria embodied in chapter 110 §2A(ii).

Petitioner avers that approval of the RFP by the Contract Committee is not optional, but is mandatory under the rules promulgated pursuant to 5 M.R.S.A. § 1825-C.[2] Essentially, respondent and intervenor reply that whatever violation of law or irregularity occurred by not sending the RFP to the Contract Committee was harmless and do not effect substantial rights of the applicant (respondent citing M. R. Civ. P. 61 "Harmless Error").

Petitioner next argues that DHS failed to comply with the provisions of chapter 110 § 2A (v) which require that sealed bids for the contracts at issue be opened in public at the Bureau of Purchases. Petitioner notes that these bids were opened in the ACF office in Boston. Respondent argues that because petitioner did not raise this issue before the Appeal Committee it is not preserved for review. Citing, *New England Whitewater Center, Inc. v. Dept. of Inland Fisheries and Wildlife*, 550 A.2d 56 (Me. 1988). Petitioner replies that respondent is in error and that all procedural due process issues were preserved because petitioner raised issues of access to witnesses and documents in pre hearing conferences, opening arguments and in questioning throughout the hearing.

---

[2] The State Purchasing Agent shall adopt rules under this subchapter governing the purchase of services, the awarding of grants or contracts, and the procedure by which aggrieved persons may appeal contract award decisions made by any department or agency of State Government. These rules must be adopted in accordance with the Maine Administrative Procedure Act and apply to all departments and agencies of State Government subject to the authority of the Department of Administration as set forth in this chapter.

Next, Petitioner argues that contrary to the provisions of chapter 110 § 2A(vi) opened proposals were not turned over to each contracting agency's representative and a written record of pertinent information was not kept at the Bureau of Purchases. Respondent replies, as above, that this issue, not having been preserved on appeal cannot be raised in this review and that in any case the applications were eventually forwarded to DHS and to both bidders as required.

Petitioner's final argument on review of bidding procedures and the requirements of chapter 110 is that DHS did not participate in the scoring process other than to have one of their employees participate as a one of the reviewers. The relevant sub section of chapter 110 reads:

> The contracting agency is responsible for reviewing all RFP's based on the criteria established within the original Request for Proposal document. The agency shall document the scoring, substantive information that supports the scoring, and make the award decision, which shall be subject to the Contract Review Committee approval.

CMR 18-554-110 § 3(a). Respondent answers that DHS designated the Director of Contracted Services within the Department as its representative in the drafting and review of the RFP as a member of the evaluation committee and as an attendee at the pre-application conference in Augusta.

In essence, petitioner argues that DHS did not follow the procedural rules in drawing up the RFP and in awarding this contract. Respondent answers variously that they did not vary in any important way from the proper procedures and that where they did vary, that variance was harmless error that was not the proximate cause of any deprivation of due process or fairness to the petitioner.

Petitioner next argues that during the appeals process, WMCC was denied due process because ACF refused to supply certain additional documents necessary for the appeal process. Petitioner filed an administrative appeal of the decision. Prior to the

hearing, Petitioner repeatedly requested all documents related to the award process from ACF and DHS. As DHS did not maintain a file regarding the process, all documents were in ACF's possession and control. DHS later provided some documentation to Petitioner, which it had received from ACF.[3]

On approximately November 5, 2002, and after the deadline for the production of documents, ACF notified DHS that they would provide no additional documents and instructed DHS to advise Petitioner to file a freedom of information request directly to the ACF if Petitioner sought additional documents. Petitioner requested all reviewers and two ACF employees as witnesses at the hearing; however, all out-of-state reviewers and the ACF employees refused to attend the hearing upon DHS's request. Petitioner maintains it was not possible to subpoena the witnesses.

Petitioner maintains that this "failure to provide documentary evidence relevant to the appeal, and the witnesses whose testimony was relevant to the appeal, is in violation of state law and also violates the Petitioner's right to due process."

First, intervenor responds that it was not the duty of the agency to supply the evidence sought by WMCC and the WMCC did not make an effort to obtain evidence from ACF (no FIOA request for example in relation to federal award). Respondent argues, as above, that this issue, raised for the first time on appeal is barred. See, *New England Whitewater*, 550 A.2d 56 (Me. 1988). Further respondent argues that even if this issue were properly before the court, the petitioner has not identified a constitutionally protected property interest. Citing, *Jackson v. Inhabitants of the Town of Searsport*, 456 A.2d 852, 857 – 858 (Me. 1983) (finding no property right in procedure). "We have never in the past accorded procedure the status of a property right. The implications of

---

[3] This documentation included the applications, redacted scoring documents, and some related post-award correspondence. Petitioner was not provided unredacted copies of the scoring documents, though such were requested.

treating all statutory procedures as property interests are momentous. Any violation of state or municipal procedure would automatically be transformed into a constitutional violation." *Id.* at 857.

Next petitioner argues that the appeal panel's findings are contrary to applicable law and the evidence presented. Petitioner refers back to its arguments regarding compliance with chapter 110. Respondent does not directly answer this argument and intervenor notes petitioner itself has given short shrift to this argument. Intervenor notes that the department had ample support for its findings in the record. In considering this argument, the court notes that the focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc. v. Superintendent of Ins.*, 703 A.2d 1258, 1261.

Petitioner's final argument is that the Appeal Committee at DHS applied the wrong evidentiary burden of "clear and convincing" in its proceedings. Citing the rules for appeal contained in 5 M. R. S. A. § 1825-E, petitioner notes that no evidentiary burden is prescribed. Petitioner argues that a standard of clear and convincing evidence is only used when prescribed by statute or court action. *Citing e.g,* 39-A M.R.S.A. § 312(7) (Board shall adopt findings of independent medical examiner "unless there is clear and convincing evidence to the contrary in the record that does not support the medical findings."); *Green v. Commissioner*, 2000 ME 92, 750 A.2d 1265 (burden of proof in insanity acquittee release hearing).

Respondent argues, once again, that this issue is not properly before the court. Further, respondent argues that even if it is deemed properly before the court it is without merit as agencies in Maine and elsewhere use this standard (clear and convincing) and petitioner has cited no case law from any jurisdiction striking down a regulation that imposes a standard of clear and convincing evidence on a petitioner. Although petitioner does not respond to this argument in particular, it is clear that what petitioner is arguing is not that a regulation could not create a burden of clear and convincing evidence (in fact they cite regulations that do exactly that) but that in this case the regulation does not call for clear and convincing evidence.

Intervenor CCI responds more directly to petitioner's argument by citing the CMR governing the conduct of appeals hearings for the Department of Administration, Bureau of Purchases, 18-554 C.M.R. 120, specifically section 2 which states:

> B.  APPEAL CRITERIA: The burden of proof within the hearing of appeal lies with the petitioner. The evidence presented must specifically address and be limited to one or more of the following:
> 1.  Violation of law;
> 2.  Irregularities creating fundamental unfairness; or
> 3.  Arbitrary or capricious award
>     Evidence of any type that cannot be related to this criterion may be ruled inadmissible by the presiding officer.

Further, CCI argues that although WMCC is specifically arguing the proper burden on evidentiary standards, it is the decision of the appeals board that is under review and that decision is specifically governed by a "clear and convincing" burden on petitioner. "The Appeal Committee shall consider all evidence entered into the record and shall look for clear and convincing evidence that one or more of the standards set forth in Section 3, subsection B, of these rules has been proven by the petitioner." 18-554 C.M.R. 120 § 4(A).

Here again, the petitioner is disputing the agency's interpretation of its own regulation. The Law Court has stated: "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n*, 684 A.2d at 1306 (citing *Centamore v. Department of Human Services*, 664 A.2d 369, 370 (Me. 1995)).

It is clear that some of the procedures outlined in CMR 18-554-110 were not followed. It is also clear that the activities of the process beyond the jurisdiction of the State of Maine creates a severe impediment to a nonsuccessful bidder enjoying the appeal rights and procedures provided by law.

The first issue to be considered by the court is a claim by the respondent that, in this particular case, petitioner seeks to overturn the decision based upon grounds not properly presented to the administrative agency. "A party in an administrative proceeding must raise any objections it has before the agency for the issue to be preserved for appeal. This prudential rule is premised on the doctrine of exhaustion of administrative remedies, and reflects 'simple fairness to those who are engaged in the tasks of administration, and to litigants' and insures that the agency and not the courts has the first opportunity to pass upon the claims of the litigants." *Berry v. Maine State Retirement System*, 663 A.2d 14 (Me. 1995) citing *New England Whitewater Center, Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56 (Me. 1988). There is, however, an exception. "We have previously recognized an exception to the prudential rule requiring an exhaustion of administrative remedies 'when the plaintiff's complaint alleges persuasive grounds for relief which are beyond the jurisdiction of the administrative agency to determine, and when it would be futile for the plaintiffs to complete the administrative appeal process.'" *Berry v. Maine State Retirement System*,

663 A.2d at 15, citing *Minster v. Town of Gray*, 584 A.2d 646 (Me. 1990); *see also Valente v. Bd. of Environ. Prot.*, 461 A.2d 716 (Me. 1983). Before the court can determine whether or not the matter has properly been brought before the administrative agency, it must consider whether the issue was before the administrative agency in fact. "An issue is considered raised and preserved for appeal 'if there is sufficient basis in the record to alert the court and any opposing to the existence of that issue.'" *Wells v. Portland Yacht Club*, 2000 ME 20, 771 A2d 371, citing *Farley v. Town of Washburn*, 1997 ME 218, 704 A.2d 347.

As a result of prehearing proceedings in this matter, the Appeal Panel required the petitioner to file a document titled, "Appellant's Issues on Appeal." Pertinent to this review are the following entries on that filing:

> I.    The RFP was not submitted to the Contract Review Committee for review as required by the Rules for the Purchase of Services and Awards, Chapter 110, Section 2A(ii).

> \* \* \* \*

> III.   The review and scoring of the grant was did not (sic) conform to the requirements of Chapter 110.

> A.    The grants were not filed and opened publicly at the Bureau of Purchases as required in Chapter 110, section rules for the purchase of services and awards.

> B.    The scoring of the grants was unlawfully delegated to the federal agency, and was not performed by the contracting agency as required by section 3 of Chapter 110.

> C.    The state had no control over the scoring procedure, the selection of the scoring panel and the records of the RFP and review process were controlled by the federal agency.

> D.    The state did not maintain a file regarding the RFP and review process impeding the petitioner's right to access to the documents pertinent to the appeal.

\* \* \* \*

V.    The petitioner has been denied due process in the grant process.

On the record, the court is satisfied that the Appeals Board was formally made aware that the petitioner was complaining that the rules were not followed as the RFP was not reviewed by the Contract Review Committee nor were the bids filed and opened publicly at the Bureau of Purchases. The Appeals Panel was well aware that petitioner was complaining about the scoring procedure and the failure of the State to maintain a file so that documents would be available to WMCC. Further, the petitioner has made it clear in its issues on appeal that it believes it has been denied due process. Whether or not the matters were argued at the appeal hearing, the court is satisfied there is sufficient basis on the record to alert the Appeals Panel and this court and the respondent as to the existence of those issues contrary to respondent's arguments.

The court next addresses the response that the petitioner has not identified a constitutionally protected property interest providing a basis upon which it may complain of lack of due process. In fact, the law, in 5 M.R.S.A. § 1825-A, defines an aggrieved person as, "any person who bids on a contract and who is adversely affected, financially, professionally or personally, by the contract award decision." The petitioner is an aggrieved person which is sufficient for it to raise the due process issue.[4]

The real issue in the matter before this court is the extent to which it must require the administrative agency to follow its own rules in the absence of a specified damage suffered by the unsuccessful bidder. Obviously, the unsuccessful bidder becomes aggrieved by failing to obtain the contract requested and by undertaking the time and expense to comply with all of the rules and regulations in the State of Maine

---

[4] The court further notes 5 M.R.S.A. § 1825-C requiring the State Purchasing Agent to adopt rules governing "the procedure by which *aggrieved* persons may appeal contract award decisions." Note also section 1825-E providing that, "rules adopted under this subchapter must establish clear procedures by which an *aggrieved* person may appeal a contract award decision." (Emphasis supplied).

governmental contract bidding process. But, in the absence of a particularized injury and with the respondent and the intervenor suggesting that violation of the rules are harmless, the obvious question before this court is, if that is the case, why have the rules? Does this court have a responsibility to enforce the integrity of the bidding process? Do specific rules have a specific purpose? Is a state administrative agency free to observe some rules and not others? Is participation by a single member of the staff of a State of Maine administrative agency in a process beyond the jurisdiction of this court acceptable in light of the specific rules and regulations in the absence of a particularized grievance?[5]

Does there exist a bright line regarding agency adherence to its own rules or procedures as it should be described and applied in a petition for review of final agency action in Superior Court? Pursuant to Maine Rules of Civil Procedure, the standard for that review is "whether the [agency] abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Oronoka Restaurant v. State Liquor Commission*, 532 A.2d 1043, 1044 (Me. 1987), quoting *Driscoll v. Wheewalla*, 441 A.2d 1023, 1026 (Me. 1982).

Agency authority is generally granted via statute. Statutes sometimes prescribe how an agency shall proceed under the statute. *See, e.g.* 22 M.R. S.A. § 326 *et seq.* ("Maine Certificate of Need Act"). Other statutes establish the general function of the

---

[5] Both respondent and intervenor cite as justification for a harmless error standard M.R. Civ. P. 61. This court rejects that basis. It has no evidence that this rule has any bearing upon the obligations of the State administrative agency. It is the final agency action being reviewed by this court. Rule 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or on anything done or admitted by the *court* or by any of the *parties* is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a *judgment* or *order*, unless refusal to take such action appears to the court inconsistent with substantial justice. (Emphasis supplied).

It is clear that the rule applies only to judgments or orders of the court and not decisions by an administrative agency.

agency, *see* e.g. the "Maine Promotion Council Cooperative," described in 5 M.R.S.A. § 13071, lay out a few general requirements (i.e. quarterly meetings) and give a general goal ("[t]o develop a unified and consistent image of Maine and its resources"). In the first situation, the unambiguous assignment of a mission and clear directives accompanying it, the Law Court has plainly stated: "[I]f the statute is plain, we give effect to the unambiguous intent of the Legislature. *Guilford Transp. Indus. v. PUC*, 2000 ME 31, ¶11 746 A.2d 910, 913. The *Guilford* Court went on to add that "[I]f the statute is ambiguous, however, we review whether the agency's construction is reasonable." *Id.*

The deference inherent in this review (similar to the *Chevron* standard discussed below) is expanded. The Law Court stated: "[w]hen, as here, the agency's own internal rules and procedures are at issue, the level of deference is heightened." *AFSCME Council 93 v. Maine Labor Rels. Bd.*, 678 A.2d 591, 593 (Me. 1996). A further heightening of deference appears to prevail in matters of pure policy. "When an agency utilizes its expertise in setting policy, as long as it does not contravene its statutory authority, we defer to its policy determinations." *Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME 62, ¶ 31, 823 A.2d 551, 561.

It appears then, that in Maine, if an agency is not directly contravening statutory directive it will be granted extraordinary deference regarding its interpretation of regulations, rules and adherence thereto. Regarding internal policy, dereference afforded the agency is close to plenary except when it acts in direct contravention of statutory authority. If a bright line exists, that line is likely found within the statutory authority.

The seminal case on deference to agency action in the federal law is the 1984 Supreme Court decision regarding the EPA's interpretation of a provision of the Clean Air Act. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837. In

that decision the Court devised what has been called the "Chevron two-step." Daniel G. Lloyd, *The Magnuson-Moss Warranty Act v. the Federal Arbitration Act: the Quintessential Chevron Case*, 16 Loy. Consumer L. Rev. 1, 7 (2003).

Step one consists of determining "whether Congress has directly addressed the particular question of concern." *Id.* If it is determined that Congress has directly spoken via the statute, the examination ends and there is no second step. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

If, however the statute is silent or ambiguous, under the second step the question for a court becomes "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. If it is, the agency's answer will be upheld out of "deference to administrative interpretations" and the court's finding that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844.

A standard administrative law treatise states:

> Both the Courts and Congress recognize that rules and regulations validly promulgated pursuant to congressional authority have the full force and effect of law. Therefore, an agency is as much bound by its own properly promulgated rules as the persons affected by them.

3-13 Admin. L. § 13.03(1) (MB 2003).

The Eighth Circuit has made clear that in its view agencies are bound by their own rules. "This court has previously held that an agency's failure to follow its own binding regulations is a reversible abuse of discretion." *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990). Citing *City of Sioux City v. Western Area Power Admin.*, 793 F.2d 181, 182 (8th Cir. 1986).

A federal appeals court has stated flatly "an agency's failure to follow its own regulations is fatal to the deviant action." *Union of Concerned Scientists v. Atomic Energy Com.*, 499 F.2d 1069, 1082 (D. C. Cir. 1974).

A number of circuit courts have found an exception to this rule when "[t]he rule does not apply to agency violations that are intended to regulate internal agency procedures rather than to protect any interest of the objecting party." 3-13 Admin. L. § 13.03(2) (MB 2003) citing; *First State Bank of Hudson County v. United States*, 599 F.2d 558 (3d Cir. 1979), cert. denied, 444 U.S. 1013 (1980); *Kirkland Masonry, Inc. v. Comm'r of Internal Revenue*, 614 F.2d 532 (5th Cir. 1980)

The appetite the courts have shown in the past for forcing agencies to adhere strictly to their own rules and to be absolutely bound by them has eroded in the post *Chevron* era (although, as noted above, there are exceptions) and indeed was underway before then. *See*, Rodney A. Smolla, *the Erosion of the Principle that the Government Must Follow Self-Imposed Rules*, 52 Fordham L. Rev. 472 (1984).

While there are federal courts that still seem to draw a fairly bright line concerning agency adherence to their own rules and procedures (especially the Eighth Circuit), the general trend has been toward a blurring of that line and perhaps toward no line at all. Maine has followed this trend and in the area of policy seems especially willing to grant agencies great deference.

We note that our courts have found some regulations jurisdictional and clearly mandate strict compliance. We note that others are found to be directory rather than mandatory. *See Bradbury Memorial Nursing Home v. Tall Pines Manor Assoc.* 485 A.2d 634 (Me. 1984); *see also* a reference to a review period found in *Magnetic Resonance Technologies of Maine v. Dep't of Human Services*, 652 A.2d 655 (Me. 1995).

Our legislature has directed that:

(Me. 1984); *see also* a reference to a review period found in *Magnetic Resonance Technologies of Maine v. Dep't of Human Services*, 652 A.2d 655 (Me. 1995).

Our legislature has directed that:

> The director of the Bureau of General Services shall purchase collectively all goods and services for the State or any department or agency of the State in a manner that best secures the greatest possible economy consistent with the required grade or quality of the goods or services. Except as otherwise provided by law, the director of the Bureau of General Services shall make purchases of goods or services needed by the State or any department or agency of this State through competitive bidding.

5 M.R.S.A. § 1825-B(1). By law, the director is required to enter all bids on a public record available for public inspection, (6) and awards must be made to "best-value bidder," (7). The mandate continues that "the State Purchasing Agent shall adopt rules under this subchapter governing the purchase of services, the awarding of grants or contracts, and the procedure by which aggrieved persons may appeal contract award decisions made by any department or agency of State Government. These rules must be adopted in accordance with the Maine Administrative Procedure Act and apply to all departments and agencies of State Government subject to the authority of the Department of Administration as set forth in this chapter." 5 M.R.S.A. § 1825-C.

Providing further detail to the administrative agency, the legislature has said that rules adopted under this subchapter must include clear procedures for informing the public, requesting information from bidders, determining successful bidders and awarding contracts and criteria for review of any contract award decision made. 5 M.R.S.A. § 1825-D. Subsection 2 provides that the rules of the agency must include a clear procedure "to be used when reviewing competitive bids, including the requirement that written records be kept by each person directly reviewing or ranking bids." 5 M.R.S.A. § 1825-D(2).

evidence upon which this court can determine that the agency is in error in its application of those rules. As this court understands the fundamental principles of law of the relationship of agency rules and legislation, that would apply to those rules promulgated by the agency that are within the general discretion of the statute but not specifically provided for. However, the court is concerned that the legislature has made a specific requirement that there may be review process based upon "written records [to] be kept by each person directly reviewing or ranking bids." 5 M.R.S.A. § 1825-D(2).

The representative of the respondent has testified that the file on this matter is in Boston and that it is not a "State" file. She further testified that the State only has access to a portion of the file. She further indicated that "the part of the file that I had access was a part of the bid that was . . . the State's responsibility and I felt comfortable with that." In response to the question whether she knew what was in the file in Boston, she responded, "I have no idea." The next question, "So there could be documents that were important to you and you just don't know it, is that true?" The answer was, "I don't know." In response to the question, "Could there be documents in there that you might find important?", the answer was "Perhaps."[6] The only conclusion that can be reached from an examination of the evidence before the Appeal Panel, a review of the regulations and examination of the statute, is that the legislature specifically directed records to be kept for purposes of the "review process." While the representative of the respondent testified that she was satisfied that she had seen that which needs to be seen, an aggrieved person prevented from examining such records that are involved in the review process is clearly prejudiced. Only by observing and obtaining a clear

---

[6] The court understands that this was the State's participation in contracts largely funded by the federal government and that is the rationale for the activities in Boston. However, the court was also advised by the intervenor that the federal governmental agency involved agreed to follow Maine law in the contract award process.

knowledge of all the records in the process, can an aggrieved person be aware whether the application of rule is in compliance with the statute. Inasmuch as the respondent is responsible for complying with the law and that law requires that the written records of all persons directly reviewing or ranking the bids must be available, it is clearly contrary to the letter and spirit of the law to require the petitioner to obtain access to mandatory records by use of federal Freedom of Access statutes.

This does not necessarily require the testimony of persons not subject to the jurisdiction of this court. Among other reasons, the subjective rationale used by a reviewer in developing an evaluation of a bid is not properly before the court. It must be based upon evidence. Accordingly, this court is not satisfied that the refusal of the respondent to provide all written records utilized in the award process, notwithstanding their presence in a federal agency file, constitutes substantial evidence on the record that the requirements of 5 M.R.S.A. § 1825-D have been met. Since it was agreed that the State would participate in a purchase process under Maine law with the cooperative of the federal agency for awarding a state contract, albeit highly financed by the federal government, it is clearly the legal responsibility of the State of Maine agency to make available all written records in accordance with statute.

Accordingly, the entry will be:

This case is REMANDED to the Appeal Panel of the Mane State Department of Administrative and Financial Services, Bureau of General Services, to conduct further proceedings in the matter of Western Maine Center for Children, appeal of DHS Award of Head Start and Child Care Funds for purposes of acquiring and reviewing all written records kept by any person directly reviewing or ranking bids in the underlying matter and, after appropriate hearing, to make such findings on the evidence in keeping with 5 M.R.S.A. § 1825-D(2).

Dated: April_____5_____, 2004

Donald H. Marden
Justice, Superior Court

Date Filed __1/10/03__ ____Kennebec____ Docket No. __AP03-02__
                              County

Action ____Petition for Review____
                  80C

# J. MARDEN

____Western Maine Centers for Children____ VS. __Department of Human Services & Community__

Plaintiff's Attorney | Defendant's Attorney         Concepts, Inc.

Jon R. Doyle, Esq.
Richard H. Thompson, Esq.
150 Capitol Street
Augusta, Maine  04330

- Michelle Roberts, AAG
  6 State House Station
  Augusta, Maine  04333-0006
- Marc Frenette, Esq. (CCI)
  95 Main Street
  P.O. Box 3200
  Auburn, Maine  04212-3200
  Bryan M. Dench, Esq.

| Date of Entry | |
|---|---|
| 1/10/02 | Petition for Review of Final Agency Action Pursuant to Rule 80(c), Maine Civil Rules of Civil Procedure, filed. s/Doyle, Esq.  s/Thompson, Es |
| 1/30/03 | Letter entering appearance, filed. s/Robert, AAG<br>Appearance and Statement of Position of Intervenor Pursuant to 5 M.R.S.A 11005 and Me.R.Civ. P. 80C, filed. s/Dench, Esq.  s/Frenette, Esq.<br>Intervenor's Motion to Dismiss Petitioner's Me.R.Civ. P. 80C Appeal with Incorporated Memorandum of Law, filed. s/Dench, Esq.<br>Proposed Order and Decision on Intervenor's Motion to Dismiss Petitioner's Me. R. Civ. P. 80C appeal, filed. |
| 2/7/03 | Certified Administrative Record, filed. s/Richard Thompson, Director<br>**( 3 blue notebooks in vault on back shelf)** |
| 2/20/03 | Respondent's Response to Intervenor's Motion to Dismiss, filed. s/ Robert, AAG |
| 2/21/03 | Petitioner's Opposition to Intervenor's Motion to Dismiss with Incorporate Memorandum of Law, filed. s/Thompson, Esq.<br><br>Notice of setting for __4/2/03__.<br><br>sent to attorneys of record. |
| 2/27/03 | Intervenor's Reply Memorandum in Support of its Motion to Dismiss Pettioner's Me.R.Civ.P. 80C Appeal, filed. s/Dench, Esq. |
| 4/2/03 | Hearing had on Motion to Dismiss with Hon. Justice Donald Marden, presidin Jon Doyle, Esq. for the Plaintiff, Michelle Robert, AAG for the Department of Human Services and Bryan Dench, Esq. for Defendant, Community Concepts. Oral arguments made to the court.  Court to take matter under advisement. |
| 6/6/03 | DECISION AND ORDER,  Marden, J.<br>Intervenor's motion to dismiss is DENIED.<br>Copies mailed to attys. of record.<br>Copies mailed to GARBRECHT LAW LIBRARY, DEBORAH FIRESTONE AND GOSS MINIEGRAPH |